**Linda NAPPA, Plaintiff,**

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CV 89–2063.**

United States District Court, E.D. New York.

March 2, 1990.

Scheine, Fusco, Brandenstein & Rada by Abe Heiman, Hempstead, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty. by Paul T. Weinstein, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Linda Nappa ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of a final determination of the Secretary of Health and Human Services ("Secretary") denying plaintiff's application for a period of disability and disability insurance benefits. Currently before the Court are motions by both sides for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Plaintiff first applied for disability insurance benefits on August 3, 1987, alleging disability from March 6, 1986 due to back and leg problems sustained in a work related accident. The application was denied initially and again upon reconsideration. Plaintiff then requested a hearing, which was held on November 29, 1988, before an Administrative Law Judge ("ALJ") who considered the case *de novo*. In an opinion dated January 19, 1989, the ALJ found that plaintiff was not disabled within the meaning of the Act. The ALJ's ruling became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review in a notice dated May 9, 1989.

### I.

Plaintiff, who was thirty-two years old at the onset of her injury, has an Associate's Degree and is a registered nurse. She had worked as a practical nurse at several nursing homes during the period 1978 through 1981, and subsequent to that worked as a registered nurse at the Stony Brook University Hospital from 1982 through March of 1986. Her job required constant standing and walking, bending and reaching, and frequent lifting of both equipment and patients, weighing up to three hundred pounds. On March 6, 1986, plaintiff suffered a back injury while transporting a patient.

Plaintiff testified at the administrative hearing that since the injury she suffers from constant back pain which radiates down her left leg, causing numbness, lack of feeling, and stated that occasionally her leg "just gives out." (Tr. 34).[1] Plaintiff further stated that the pain sometimes radiates down her right leg as well, and that

---

1. "Tr." refers to the transcript of the administrative hearing in the file of this case.

she suffered urinary problems which she had been told were due to the stress associated with the back injury.

Plaintiff estimated that she could sit for a half an hour at a time, stand for a half an hour and walk for fifteen to twenty minutes, and that she could not do any lifting. She reported that she was unable to do housework, grocery shopping, or even take a shower alone, for fear of her legs giving out. Plaintiff claims to have social contact only with her mother, no recreational activities or hobbies, and the ability to do only local driving. She takes up some time by working one to two hours per day, twice a week, at a business she established from her home. To this end, plaintiff claims to only answer phones and do some light filing.

Plaintiff began seeing her treating physician, Dr. Frank P. Vaccarino, a board certified orthopedic surgeon, on March 10, 1986, four days following her accident. He reported that x-rays taken of her back at the time of the injury were negative as to recent fractures or dislocations. The physical examination by the doctor showed that plaintiff was in obvious distress. He diagnosed acute sprain of the lumbar spine, with pain radiating persistently to the left leg and knee, and occasionally to the right leg and knee, prescribed orthopedic care and physiotherapy, and ultimately declared plaintiff totally disabled. Over the next several months, Dr. Vaccarino saw plaintiff frequently, during which time he additionally diagnosed intermittent parathesia, sciatica, a palpable nodule at the left iliac crest, a large anterior bulging disc between L4–L5, a posterior herniation of the disc between L3–L4 in the midline, and limited trunk motion.

The most recent report from Dr. Vaccarino, dated June 22, 1988, indicated that plaintiff was still suffering from the above mentioned symptoms as well as the development of a neurogenic bladder with frequency and nocturia and incomplete bladder evacuation. The doctor advised surgery, but noted that in view of previous cardiac abnormalities plaintiff would be a high risk. He further stated that plaintiff was still markedly disabled and not considered employable.

In connection with her Workers Compensation claim, plaintiff was referred by the State Insurance Fund to Dr. Arnold M. Illman, also a board certified orthopedic surgeon. He examined her on September 22, 1986, and reported that she was not able to move freely without severe pain down both legs and into her back. Dr. Illman confirmed a bulging at L4–L5 and a diminished range of motion, and also declared plaintiff markedly disabled.

## II.

At the November 29, 1988 hearing, plaintiff testified that she knew she could not go back into nursing, so she attempted to start her own business. She learned how to read blueprints of office designs and how to place bids with furniture distributors for the installation of their modular office furniture. To this end, plaintiff hires workers from local unions to do the physical assembly and installation of the furniture and has a payroll service do some of the financial work. Her own activity is limited to reading the blueprints, telephone work, and writing out invoices, for a total of about an hour a day. The business, which was incorporated as J.I.G. Furniture, Inc. in November of 1985, is a subchapter S corporation.

Plaintiff testified that she actually began doing business in January or February of 1987, and further testified that she did not draw any salary from the business because she needed to keep profits in reserve to meet payroll expenses. Ultimately, the business did show a profit of $19,147 for 1987, and under subchapter S, it is considered personal income to plaintiff. The business began to prosper in 1988, with expected profits of nearly $40,000 and the hiring of a full-time foreman.

## III.

The Secretary's determination that plaintiff was not disabled under the Act, due to the fact that her business constituted substantial gainful employment, is conclusive if supported by substantial evidence on the

record as a whole. 42 U.S.C. § 405(g); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). To find substantial evidence, the district court should look to the entire record, including both contradictory evidence as well as evidence from which conflicting inferences can be drawn. *Mongeur v. Heckler*, 722 F.2d 1033 (2d Cir.1983).

In the present case, plaintiff argues that the ALJ erred by holding she was not under a disability at any pertinent time. She claims that her activities for the corporation, of which she is the sole shareholder, were not substantial gainful activity. Plaintiff bases this argument on the fact that she works only one hour per day and draws no salary. She further claims that if it was substantial gainful activity, then she is entitled to have it considered a trial work period, thereby retaining a disability status.

The Secretary, on the other hand, argues that plaintiff has been engaging in substantial gainful activity since at least January 1987, *within* twelve months of the onset of her injury. He claims that her earnings of $19,147 during 1987 average well in excess of the $300 monthly substantial gainful activity threshold provided in 20 C.F.R. § 404.1574(b)(2).

Under the law, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of establishing the claimed disability is on the claimant. 42 U.S.C. § 423(d)(5). Plaintiff undertook to meet this burden by presenting medical evidence purporting to demonstrate a disability from March 6, 1986 through November 1, 1987.

■ In determining whether a claimant is disabled, the Secretary is to conduct a five step sequential evaluation process. 20 C.F.R. § 404.1520; *DeRienzis v. Heckler*, 748 F.2d 352, 353 (2d Cir.1984). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity, and if she is, benefits must be denied regardless of the claimant's medical condition. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1520(b). In this case, the ALJ found that plaintiff had been engaging in substantial gainful activity since January 1987, before the lapse of twelve continuous months from the alleged onset of her disability, and therefore found that plaintiff was not under a disability.

In addressing the question of whether or not a self-employed person is engaged in substantial gainful activity, the Secretary must answer in the affirmative if the work activity is comparable to that of unimpaired individuals who are in similar businesses. 20 C.F.R. § 404.1575(a)(1). Factors to be considered include hours worked, skills required, energy output, efficiency, and duties and responsibilities. *Id.* It is clear that Nappa's hours, as well as certain other factors, are not comparable to those of an unimpaired business owner, who would clearly be capable of putting more time and effort into such a venture.

Yet even though not comparable, if a claimant renders services that are "significant to the operation of the business and receive[s] a substantial income from the business," the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1575(a)(3). "Significant services" include "more than half the total time required for the management of the business." 20 C.F.R. § 404.1575(b)(1). "Substantial income" means making an average of $300 per month. 20 C.F.R. §§ 404.1575(c)(1); 404.1574(b)(2). The services provided by plaintiff herein include more than half the total time required for management. Although she avoids the physical work, she is solely responsible for the managerial functions. Her responsibil-

ities include financing the corporation, soliciting business, reading blueprints, preparing and submitting bids and hiring workers to install the modular furniture.

Plaintiff also received a substantial income from her business. She asserts that the 1987 profit of $19,147 was not earnings because she left the money in the business. In other words, plaintiff contends that the Court should not "pierce the corporate veil" and construe the money as earnings. Nevertheless, as sole shareholder of an S corporation, plaintiff has complete discretion to determine where the profits will go. The profits became her asset, and as such were reported on her personal 1987 income tax return. Consequently, plaintiff's decision to reinvest her earnings in her business is not dispositive; the profits still must be construed as income.

It is to be noted that other courts have held that duties such as those performed by plaintiff are not substantial. In *Mazzella v. HHS*, 588 F.Supp. 603 (S.D.N.Y.1984), the court held that an employee was not capable of even "sedentary work" when medical evidence determined he could not sit for more than three hours in an eighthour workday. Although plaintiff allegedly cannot sit even that long, she has shown that she can manage a successful business.

Two other circuits addressing related issues have reached conclusions which, as pointed out below, do not apply to the case at bar. In *Tucker v. Schweiker*, the Fifth Circuit held that two or three hours per month of sedentary paperwork in conjunction with the claimant's own business was not substantial activity. 650 F.2d 62 (5th Cir.1981). However, in *Tucker* the claimant was self-employed as a sand and gravel transporter prior to his disability. Furthermore, as a result of the specific arrangement created by the claimant in *Tucker*, the paperwork activities at issue were merely "adjuncts to his investment earnings." *See id.* at 64. Plaintiff herein, however, did not own a business before her injury, and therefore any earnings she receives are strictly as a direct result of her activities in the business, however minimal.

Moreover, *Tucker* was decided prior to the enactment of 20 C.F.R. § 404.1575, which provides that a self-employed individual putting in more than half the total time needed for management is engaging in substantial activity.

In *Cornett v. Califano*, the Fourth Circuit held that the Secretary's finding that a claimant could still work as a self-employed transcriber from her home was an unreasonable burden to place on her. 590 F.2d 91 (4th Cir.1978). The *Cornett* court reasoned that in light of the facts and the claimant's physical impairments in that case, the burden would have been impossible. *Id.* at 94. However, in the present case, plaintiff successfully overcame those burdens to establish a productive business. Had she not gotten involved in such a business, the ALJ would not have been in a position to claim that such activity was within her capabilities without further evidence. In other words, once plaintiff began working at her business, the ALJ was provided with proof positive that plaintiff's activity was within her residual function capacity.

Plaintiff contends that the corporate veil should not be pierced and that she should be treated as a mere employee of the company. If she is treated in this way, different definitions apply to her work activity. In that event, "substantial" activity is that which "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). It is to be noted that the activity may be considered substantial even if done on a part time basis. *Id.* "Gainful" activity is that "done for pay or profit" *or* "the kind of work usually done for pay or profit, whether or not profit is realized." 20 C.F.R. § 404.1572(b).

It is clear that plaintiff's activities are the kind usually done for pay or profit, so that her claim that she did not draw a salary is moot. Clearly, her activity is nevertheless gainful. Likewise, although she is not working on a full-time basis, the significance of the activities she provides on a part-time basis precludes her from successfully claiming that her job is not substantial work activity.

## IV.

Plaintiff argues that if her activity is found to be both substantial and gainful, it should be construed as a trial work period. The trial work period is a period during which a disabled claimant can test his or her ability to work and still be considered disabled. 20 C.F.R. § 404.1592(a). Plaintiff claims that when she began working at J.I.G., she was merely testing her ability to work.

The Secretary correctly points out, however, that there can be no trial work period before a claimant actually files an application for benefits, since a trial work period only applies after a person has been adjudged disabled, in order to permit efforts to resume work without jeopardizing benefits if the effort fails. 20 C.F.R. § 404.1592(e); see Mullis v. Bowen, 861 F.2d 991, 992 (6th Cir.1988); McMillen v. Califano, 443 F.Supp. 1362, 1367 n. 5 (N.D. N.Y.1978). Since plaintiff had never been adjudged disabled, or even filed an application to be adjudged disabled, her activities cannot be considered a trial work period. Therefore, any work activity engaged in by plaintiff during this period may be taken into consideration by the Secretary in determining whether she was engaged in substantial and gainful activity during the period of the alleged disability. See Goldstein v. Harris, 517 F.Supp. 1314, 1318 (S.D.N.Y.1981).

Had plaintiff filed her application for disability benefits as late as January of 1987, the time she began working at her business, she would have been eligible for a trial work period. See 20 C.F.R. § 404.1592. The regulations contemplate that the trial work effort should be "undertaken with knowledge of the Secretary so that, among other things, its bona fides and rehabilitative purpose may be monitored." Sigmon v. Califano, 617 F.2d 41, 43 (4th Cir.1980). This can only be assured after the Secretary is made aware of the existence of a claim for benefits. Id.

As a final point, plaintiff urges that if her work activity is substantial and gainful—and not to be construed as a trial work period—then her claim for a period of disability is still viable even though performance of the work activity began only ten months after the onset of her injury. To this end, she asks this Court to look to the ruling in McDonald v. Bowen, 818 F.2d 559 (7th Cir.1986), which the Social Security Administration has directed will apply only within the Seventh Circuit. See Social Sec. Ruling AR 88–3(7). In McDonald, the Seventh Circuit held that "[w]hen an individual has been disabled for five consecutive months and suffers from an impairment which can be expected to last for a continuous period of twelve months, that person is entitled to disability benefits." 818 F.2d at 563. Under the rule of McDonald, when an individual is disabled as defined by 42 U.S.C. § 423(d), he or she "need not actually be impaired for twelve months to be entitled to benefits. An applicant may be entitled to benefits if he or she suffers from an impairment which is expected to last for a minimum of twelve consecutive months." Id. (emphasis added). The individual can return to work after a period of five months, yet prior to an award of benefits, and still be eligible to receive an award inasmuch as the return to work cannot be considered as evidence of claimant's capabilities.

As to all other circuits, however, the Social Security Administration emphasizes the validity of the rule which states that if a claimant returns to work after the five month waiting period, yet before twelve months from the onset of the injury, and prior to an award of disability benefits, the work activity may be considered as evidence of claimant's ability to engage in substantial gainful activity within the twelve month period following the onset of the injury. Social Sec. Ruling AR 82–52. The definition of "disability" is the "inability to engage in any substantial gainful activity ... which has lasted or can be expected to last for a continuous period of not less than 12 months," and where evidence shows that the disability has not lasted for a period of twelve months, the claim may properly be denied. 42 U.S.C. § 423(d)(1)(A).

Although plaintiff asks this Court to follow the Seventh Circuit, there is no proffered reason to stray from the Administration's rule. Clearly, the *McDonald* ruling contemplates an early filing of the application for benefits and applies only to applicants awaiting a determination of their claims. Thus, the rule allows such applicants to test their ability to work, even though the Secretary has not yet made an award. It also allows those who have been awarded benefits to take advantage of a trial work period without an immediate termination of their benefits. In short, as long as the *expectation* of a twelve month disability remains, claimants in the Seventh Circuit are entitled to a trial work period.

While plaintiff's argument that this rule should apply to the other circuits may have some merit, it is not relevant to her claim and will therefore not be considered. It is unnecessary to consider whether or not a valid expectation of a twelve month disability existed because the outcome of this case was already before the ALJ. Although the requirement of a twelve month continuous disability is "forward-looking and is not to be nullified by hindsight," it is evident that it is forward-looking from the point an application is filed. *See McDonald*, 818 F.2d at 563; *Sierakowski v. Weinberger*, 504 F.2d 831, 834–35 (6th Cir. 1974) (wherein the claimant returned to work after he was awarded benefits, but before the twelve month continuous period had expired, and because the requirement was forward-looking, he was not obligated to repay the benefits he had already received based upon the expectation that he would be disabled for twelve months).

Both of the above-cited cases refuse to penalize an applicant for attempting to return to substantial gainful activity when at the time benefits are determined, the expectation of a twelve month disability remains, yet the actual outcome is unknown. In this way, the requirements are forward-looking. *See McDonald*, 818 F.2d at 563; *Sierakowski*, 504 F.2d 831 (6th Cir.1974). In the present case, the outcome was clearly known. The ALJ was able to determine from the evidence that plaintiff's disability would not last twelve consecutive months.

Plaintiff urges that the ALJ be required to consider the expectancy of a twelve month disability as it may have existed when plaintiff began her business. Yet there is no reason to rely on expectations and speculations when the outcome of the situation is known. In short, had plaintiff filed an application and been denied *prior* to March 6, 1987 when the twelve months would have expired, then a consideration of the Seventh Circuit ruling would be made. However, since she chose to wait until August, 1987 to file for benefits, there is no reason to consider the expectation of a disability. In this case the ALJ did not nullify the possibility of an award based on hindsight, he simply determined that there was sufficient evidence on the record to establish that plaintiff would not be unable to engage in substantial gainful activity for twelve continuous months at any time prior to her application, nor could she have legitimately expected such a scenario for the necessary period after her application.

## CONCLUSION

Taking into account the evidence on the record as a whole, it is apparent that there was substantial evidence to support the Secretary's conclusion that plaintiff's work endeavor was substantial gainful activity. Furthermore, since plaintiff is not entitled to a trial work period, and since her substantial gainful activity was undertaken before the lapse of twelve continuous months from the onset of her injury, she is not entitled to disability benefits. Therefore, plaintiff's application was properly denied. Accordingly, the Secretary's motion for judgment on the pleadings is granted.

SO ORDERED.