**Mary Lee HUNTER, Plaintiff,**

**v.**

**The DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. CV–93–2898 (DGT).**

United States District Court,
E.D. New York.

May 2, 1994.

**76**

Wendy Brill, Esq., New York City, for plaintiff.

Zachary W. Carter, U.S. Atty., Brooklyn, NY by Jody Kasten, for defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiff Mary Lee Hunter, a schoolteacher, is a severe asthmatic. She is unable to regulate her condition with conventional medication because of the adverse side-effects of such treatment. On January 18, 1988, finding herself unable to work, she took a leave from her job with the Sachem District School. After waiting five months, as required by 42 U.S.C. § 423(c)(2), still homebound and unable to work, Ms. Hunter filed a claim for disability insurance benefits with the Department of Health and Human Services on June 21, 1988.

Ms. Hunter's claim had not yet been processed by the time the new school year began in September, more than two months after she had filed for disability. In the interim, because money was scarce and she was quickly approaching destitution, Ms. Hunter spoke with her employer about the possibility of a modified teaching schedule—one that would allow her frequent recesses during which she could monitor and regulate her breathing. Her employer agreed to the experiment and Ms. Hunter returned to the workforce on September 6, 1988. Breathing equipment was installed at the school for this purpose.

Three weeks later on September 27th, the Secretary determined that Ms. Hunter was disabled and was entitled to disability insurance benefits. Ms. Hunter immediately advised her local Social Security Office of the new work arrangement with her school. She nevertheless continued to receive benefit checks. Two years later, she would write the Director of the Office of Disability:

> I am not entitled to disability insurance benefits! I did report back to work in September, 1988. I have been trying to inform your office since then. I reported to the Social Security Office . . . as soon as I reported back to work. At that time I notified the social security people . . . that I had received a check for disability insurance benefits. I filed a form at that time. I again completed a form in December, 1988. I told the administrator that I was still receiving checks at the beginning of each month. I was instructed to make

copies of each check and deposit it until further notice. In the spring of 1989, I decided that it was best that I did not cash the monthly checks. I have been holding them until I received further instructions.

Ms. Hunter's efforts to stop the flow of disability checks finally met with success when, on August 26, 1990, she was notified by the Social Security Administration that her initial award of benefits had been reversed because Ms. Hunter had later proved capable of returning to work. The agency had determined that Ms. Hunter was never disabled in the first place. Moreover, the reversal was to be retroactive. Thus, the Director now demanded that Ms. Hunter return the disability insurance benefits, not only for the period after September, 1988, but also for those she received for the period prior to her return to work.

Ms. Hunter argues that she was entitled to the disability payments for the period prior to her return to work, as well as for a "trial work period" pursuant to 42 U.S.C. § 422(c) (1993), which allows a disabled claimant a nine-month period in which to attempt to reenter the workforce without forfeiting her disability benefits.

■ It is the Secretary's position that before one can qualify either for a disability insurance benefit or a "trial work period," one must first be "adjudicated" by the agency to be disabled. Def's Mem.Supp.J. on Plead., at 7. The Secretary relies on Social Security Ruling 82-52, which provides that if a claimant actually succeeds in returning to work in the first year of the impairment, but prior to a determination of disability, it is deemed conclusive that the claimant could not meet the statutory definition of "disabled." Because Ms. Hunter returned to work three weeks before the determination of disability had been made and before a year had passed, she was, according to S.S.R. 82-52, not entitled to any benefits.

On its face, S.S.R. 82-52 contradicts the plain language of the Social Security Act's definition of "disability." More importantly, S.S.R. 82-52 undercuts, if it does not nullify, the Act's "trial work period" policy, which seeks to encourage the disabled to return to work as soon as possible, as Ms. Hunter did. 42 U.S.C. § 422(c).

Clearly, there is a rational basis to believe that, in many instances, those who return to work within a year were never in fact disabled as contemplated by the statute, and Congress could have easily required, as does S.S.R. 82-52, a waiting period of a year before awarding any benefits. But it is evident from an analysis of the statute that, as a matter of policy, it chose not to do so.

■ The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1993). The applicable regulations set forth a multi-stage analysis to be used in making this determination. The claimant must first be found incapable of engaging in "substantial gainful activity" during the period in question and the inability to work must be "expected to last" for at least a year, or result in death. Although this durational limitation was intended to exclude claims for temporary disabilities that result in short term impairment, the plain language of the statute requires only an expectation of a disability that will last at least a year, not an actual disability of a year's length. *See* S.Rep. No. 404, 89th Cong., 1st Sess. 98–99, *reprinted in* 1965 U.S.Code Cong. & Ad. News 1943, 2038. And the statute certainly says nothing about a claimant first being adjudicated disabled by the Social Security Administration for him or her to be found disabled.

Moreover, I decline to ascribe an intent to Congress to authorize the agency to read the statute in the manner it has in S.S.R. 82-52 when the results, as we shall soon see, are so absurd and contrary to the policy of other statutory provisions. The point at which the Secretary comes to acknowledge the existence of a disability is not and should not be a consequential factor in the calculus of entitlement, let alone a determinative one.

■ First, it should be noted that a published Social Security ruling is intended to bind only the Social Security Administration. 20 C.F.R. § 422.406(b)(1) (1992). It has neither the force nor the effect of either law or of Congressionally promulgated regulations. As such, it is not entitled to any special deference. *See Heckler v. Edwards,* 465 U.S. 870, 874, n. 3, 104 S.Ct. 1532, 1534, n. 3, 79 L.Ed.2d 878 (1983).

■ According to S.S.R. 82–52, if the claimant attempts to return to work during the first year of disability, but prior to the time when the agency acknowledges him or her to be disabled, the claimant's disability could never have been expected to last a year and thus there can be no qualifying disability under the statute, even if the illness manifested at the outset every indication of permanency or long-term disability. Still, if the agency had already determined a claimant to be disabled, S.S.R. 82–52 does not mandate a retroactive disqualification of a claimant's disabled status, even if she returns to work the next day.[1]

Furthermore, the Social Security Act and S.S.R. 82–52 provide that once a claimant becomes entitled to disability benefits, he or she may attempt a "trial work period," where a claimant can experiment with returning to work without jeopardizing disability benefits. 42 U.S.C. § 422(c) (1993). S.S.R. 82–52, however, effectively negates this statutory provision during the first year of disability if there has been no determination by the agency.

S.S.R. 82–52, thus, sends two disheartening messages to claimants: first, they should certainly not attempt to go back to work until they are adjudicated to be disabled by the Social Security Administration, and, second, they should probably stay at home for at least a year if they wish to avail themselves of a trial work period. If they are foolish enough to go back to work before they receive at least an initial determination of disability from the Social Security Administration, they will not only lose a trial work period, but they also will retroactively lose all their pre-return to work benefits, and, in addition, will have to repay any monies which they may have received.

Because S.S.R. 82–52 makes the timing of the agency's determination of disability decisive, it not only penalizes claimants for trying "to do the right thing," but it also rewards the Social Security Administration for its own inefficiencies. Indeed, it appears that S.S.R. 82–52 becomes a significant problem for claimants because of growing agency delays in processing disability claims. It was recently estimated that it now takes on the average 155 days to process a claim from the initial filing of an application to a determination of entitlement.[2] Were the agency able to make its determinations promptly, this issue would rarely arise. No retroactive repayment would be demanded where the claimant is initially awarded benefits but later returns to work, but even were the claimant initially denied benefits and later it was determined that the denial was in error, under S.S.R. 82–52, the claimant would have received at least the pre-return benefits. Ms. Hunter was caught up in a *Catch–22* situation only because the Department of Health and Human Services hadn't ruled— one way or the other—on her application prior to her returning to work. Because the Secretary failed to rule within a reasonable period, say 60 days (which would still have been before the beginning of the school year), Ms. Hunter lost not only her pre-return benefits, but also the opportunity for a trial work period.

Moreover, and somewhat ironically for Ms. Hunter, it appears that because of agency delays, this demand for retroactive reimbursement is relatively rare. Normally, the lengthy time required for an initial determi-

---

1. The relevant portion of S.S.R. 82–52 reads as follows:

   When an individual whose entitlement is established on the basis of expected duration returns to work which demonstrates ability to engage in SGA after an award of benefits but within the 12-month period after onset, benefits should be terminated (subject to the possible entitlement of the individual to a trial work period). The prior award should not be reopened and reversed.

2. Robert Pear, *U.S. Seeks to Ease Process of Getting Disability Benefits,* N.Y. TIMES, April 8, 1994, at A18.

nation would have assured that Ms. Hunter would never have seen a check. Indeed, it was only because Ms. Hunter's condition seemed so unquestionably disabling, that the initial determination of disability was made in what appears to be record time. Nevertheless, it was not fast enough to qualify Ms. Hunter for a disability period and a trial work period. As a result, she lost not only the trial work period, but her pre-return to work payments.

In sum, Social Security Ruling 82–52 mandates that the Social Security Administration must retroactively reverse an award in cases where it is later discovered that the claimant had successfully attempted a return to work prior to the agency's approval of his or her application. And it does not matter how unquestionable was the claimant's disability. The Court does not accept the Secretary's claim that the statute authorizes such a counterproductive policy.

Furthermore, according to the statute itself, § 423(a), a claimant qualifies for a trial work period on the date upon which she becomes "entitled" to disability insurance benefits. 42 U.S.C. § 423(a) (1993). Granted that one is insured, not yet retired, and has timely filed the requisite application, if one is "under a disability," one is entitled to a subsidized attempt at returning to work. Had the Secretary here made its determination promptly and prior to Ms. Hunter's return to work, instead of subsequent to that event, she would also have qualified under S.S.R. 82–52 for a trial work period treatment under § 422(c), despite the fact that she in fact returned to work within the first year of the onset of disability. Thus, she would have been entitled to benefits for the eight months that she was homebound, and for up to nine additional months after her return to the classroom, after which she would be able to make an informed decision whether she possessed the required stamina to return to work permanently and forfeit any subsequent disability entitlement.

Although S.S.R. 82–52 no doubt serves to weed out the temporarily disabled, it also excludes the truly disabled who, like Ms. Hunter, after waiting indefinitely, are trying their level best to be productive. The agency's present posture in S.S.R. 82–52 undermines such a claimant's initiative instead of encouraging it, as it ought to. The policy rewards apathy, as claimants come to realize that it is prudent to stay in bed probably until the first anniversary of their disability, but certainly no sooner than the date upon which the agency stamps its approval on the disability claim. Congress could not have intended this result—deterring claimants who wish to return to work from doing so, especially if they do not do so because of the agency's inefficiencies.

In so ruling, I reach a result similar to those in the Seventh and Tenth Circuits, which justly refused to stand behind S.S.R. 82–52 for much the same reasons. *McDonald v. Bowen,* 818 F.2d 559 (7th Cir. 1986); *Walker v. Department of Health and Human Services,* 943 F.2d 1257 (10th Cir. 1991). *See also Mulderig v. Sullivan,* 1993 WL 22152, 1993 U.S.Dist. LEXIS 908 (S.D.N.Y. January 28, 1993).

Accordingly, because Ms. Hunter was in fact disabled with the unquestioned expectation that she would remain so, as recognized by the Social Security Administration in its initial determination, she was entitled as a matter of law to disability insurance benefits from January 18, 1988, and the benefit of a trial work period. The determination of the administrative law judge is reversed.

**SO ORDERED:**