Jacqueline FABEL, Plaintiff,

v.

Donna E. SHALALA Secretary of Health and Human Services, Defendant.

Civ. A. No. 93-5160.

United States District Court, D. New Jersey.

July 3, 1995.

Polonsky & Polonsky, P.C. by Alan H. Polonsky, Audubon, NJ, for plaintiff.

U.S. Attys. Office by Susan J. Steele, Sp. Asst. U.S. Atty., Newark, NJ, for defendant.

## OPINION

IRENAS, District Judge:

Claimant Jacqueline Fabel brought this action pursuant to 42 U.S.C. § 405(g) (1991) of the Social Security Act (the "Act") for review of a final determination by the Secretary of Health and Human Services ("the Secretary") denying her application for disability insurance benefits. Because the Court finds that the Social Security Ruling on which the Secretary relied to reach its conclusion is inconsistent with the plain language of the Act, the Secretary's decision is reversed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Claimant was born on April 13, 1938. (R. at 28) On July 8, 1991, she applied for disability insurance benefits, alleging that as of December 25, 1990, her multiple sclerosis, (R. at 28), precluded her from engaging in "substantial gainful activity" as that term is used in the Act. (R. at 25). *See* 20 C.F.R. § 404.1572. On July 31, 1991, approximately three weeks after applying for benefits and before her award of benefits was approved, (R. at 17), claimant returned to work. (R. at 146). During the period she was working, she earned over $1000 a month. (R. at 30) On March 20, 1992, she stopped working due to difficulties connected with her multiple sclerosis. (R. at 146). On October 10, 1991, the Social Security Administration ("the SSA"), determined that claimant was disabled from the period commencing December 25, 1990. (R. at 14, 28). Claimant was deemed conclusively disabled from the beginning of this period because her multiple sclerosis met the Listing of Impairments, Medi-

cal List Number 11.09.[1] (R. at 28). *See* 20 C.F.R. App. 1, Subpart P, Regulations No. 4; 20 C.F.R. § 404.1520(d).

On May 1, 1992, the SSA revised its original determination and changed claimant's disability onset date from December 25, 1990, to March 20, 1992. (R. at 30). The SSA based this determination on the claimant's work activity from July 31, 1991, through March 19, 1992. (R. at 18). The SSA upheld this determination upon reconsideration. (R. at 35).

On September 9, 1992, claimant requested a hearing before an Administrative Law Judge ("ALJ"), contending that her work activity between July 31, 1991, and March 19, 1992, should have been considered a "trial work period" pursuant to 42 U.S.C. § 422(c), and that the original disability onset date of December 25, 1990, should be reinstated. (R. at 44). The claimant did not contest the SSA's evaluation of the facts, but rather challenged the decision on purely legal grounds. (R. at 146). She therefore waived her right to admit additional testimony and requested a decision based solely on the evidence of record. (R. at 14, 146).

On May 5, 1993, the ALJ heard argument on the case and denied claimant's request to reinstate the SSA's original determination of a December 25, 1990, disability onset date. (R. at 18). The ALJ, in making his decision, relied on the SSA's interpretation of the Act in Social Security Ruling ("SSR") 82–52 and Social Security Acquiescence Ruling ("AR") 92–6(10). SSR 82–52 held that a claimant is not entitled to a trial work period and must be denied benefits if she engages in work activity either before approval of a disability insurance award or before twelve months have elapsed since her disability onset date. AR 92–6(10) limited certain appellate court cases rejecting SSR 82–52 to their respective Circuits. The ALJ's ruling became the final decision of the Secretary when, on October 22, 1993, the Appeals Council denied plaintiff's request for review. (R. at 4–5). Claimant sought review of the Secretary's decision by this Court through a Complaint filed on November 23, 1993. *See* 5 U.S.C. § 706; 42 U.S.C. § 405(g).

## II. STATUTORY BACKGROUND

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which *can be expected to* result in death ... or which ... *can be expected to* last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1991) (emphasis added). The beginning of this twelve month period is referred to as the disability onset date. *See* 3 *Social Security: Law and Practice*, § 44:134 at 112. In order for work activity to be regarded as substantial gainful activity, it must be both substantial and gainful. *See* 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities," 20 C.F.R. § 404.1572(a), and "[g]ainful work activity is work activity [that is] ... usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

Under the Act, an individual who meets four statutory conditions[2] becomes "entitled

---

**1.** Regulations promulgated under the Social Security Act establish a five step process for an ALJ's evaluation of a claimant's disability. *See* 20 C.F.R. § 404.1520 (1994). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a). If the claimant is working, her application for disability benefits is automatically denied. *See* 20 C.F.R. § 404.1520(b). If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment or combination of impairments." 20 C.F.R. § 404.1520(c). A claimant who does not have a "severe impairment" is not disabled. *Id.* Third, if the impairment is found to be severe, the ALJ determines whether the impairment is listed in

20 C.F.R. App. 1, Subpart P, Regulations No. 4 (the "Listing of Impairments"). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends there. *See* 20 C.F.R. § 404.1520(d). Because the SSA found claimant conclusively disabled under Step 3, Steps 4 and 5 are not relevant here.

**2.** 42 U.S.C. § 423(a)(1) states, in relevant part:
Every individual who—
  (A) is insured for disability insurance benefits ...
  (B) has not attained retirement age ...
  (C) has filed application for disability insurance benefits, and
  (D) is under a disability ...

to a disability insurance benefit (i) for each month beginning with the first month after his waiting period (as defined in subsection (c)(2) of this section) in which he becomes so entitled to such insurance benefits...." 42 U.S.C. § 423(a)(1). The statute defines waiting period as "the earliest period of five consecutive calendar months (A) throughout which the individual with respect to whom such application is filed has been under a disability...." 42 U.S.C. § 423(c)(2).

Under § 423(a)(1) an individual is therefore "entitled" to benefits five months after the date that her disability commences, regardless of when the SSA formally awards her a disability insurance benefit. For example, the SSA may not formally approve an award for months or even years after the application is filed, but the claimant is still entitled to benefits starting five months after the disability onset date determined by the SSA regardless of the date of the award. Indeed, after it makes a disability determination, the SSA must pay the claimant a maximum of one year's "pre-filing" retrospective benefits. 20 C.F.R. § 404.621(a)(1).

An individual who is "entitled" to disability insurance benefits may also engage in a trial work period. 42 U.S.C. § 422(c)(3). During this period, the disabled person "may perform services in as many as nine months, but these months do not have to be consecutive." 20 C.F.R. § 404.1592(e). The trial work period begins "with the month in which [an individual] ... becomes entitled to disability insurance benefits," 42 U.S.C. § 422(c)(3), and "ends with the close of ... the ninth month, beginning on or after the first day of such period, in which the individual renders services (whether or not such services are consecutive)." 42 U.S.C. § 422(c)(3). However, the trial work period cannot begin before the claimant files her application for benefits regardless of the alleged disability onset date. 20 C.F.R. § 404.1592(e). The purpose of the trial work period is to give the disabled person an opportunity to test her "ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). Hence, "any services rendered by an individual during a period of trial work [is] ... deemed not

shall be *entitled* to a disability insurance benefit....

to have been rendered by such individual in determining whether his disability has ceased." 42 U.S.C. § 422(c)(2).

In short, under the Act, an individual becomes entitled to a trial work period at the same time she becomes entitled to a disability insurance benefit award, five months after her disability onset date. Therefore, while the Act defines a "disability" as an impairment which "can be expected to last for ... 12 months", 42 U.S.C. § 423(d)(1)(A), the Act also appears to entitle a claimant to a trial work period beginning five months after the alleged disability onset date, regardless of whether 12 months have passed.

## III. *STANDARD OF REVIEW*

█ In reviewing a final determination of the Secretary, her findings of fact that are supported by "substantial evidence" are conclusive. 42 U.S.C. § 405(g)(1991). However, because "the judiciary is the final interpreter of the Social Security Act," this Court reviews *de novo* whether the Secretary has applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3rd Cir.1983).

## IV. *DISCUSSION*

The SSA originally found that in June of 1991, when she filed her application for disability insurance benefits, claimant expected to be unable to perform substantial gainful activity for a continuous period of not less than 12 months, beginning with her disability onset date of December 25, 1990. Claimant did not engage in any substantial gainful activity for more than five months after December 25, 1990, but rather did not begin working until July 31, 1991. Therefore, this Court need only decide whether the ALJ was correct in using claimant's work activity from July 31, 1991, to March 19, 1992, to establish that claimant was not disabled until March 20, 1992. We find that the ALJ was incorrect because the claimant's work activity from the period July 31, 1991, through March 19, 1992, constituted a trial work period within the meaning of the Act.

(emphasis added)

### A. THE SSA'S POSITION ON WHEN A CLAIMANT IS ENTITLED TO A TRIAL WORK PERIOD

In SSR 82–52, the SSA has clearly indicated its position on when a claimant is entitled to a trial work period. According to the SSA, when an individual returns to work

demonstrating ability to engage in SGA [substantial gainful activity] before approval of the [disability insurance] award and prior to the lapse of the 12–month period after ... [the disability onset date], the claim must be denied.... If the award was previously approved, the claim must be reopened and revised to a denial.

SSR 82–52. Under SSR 82–52, the SSA will only regard work activity as a trial work period if the individual has either received her disability insurance award or the individual has waited twelve months after her disability onset date to engage in the work activity. If neither of these are met, the individual will be denied benefits even if she waits the requisite five month waiting period before beginning the trial work period. In effect, SSR 82–52 extends the five month waiting period to a twelve month waiting period for all disability insurance applicants who do not receive an award within a year of their alleged disability onset dates.

### B. JURISDICTIONS REJECTING SSR 82–52

Several jurisdictions have rejected the reasoning of SSR 82–52. In *Walker v. Secretary of Health and Human Services*, 943 F.2d 1257 (10th Cir.1991), the claimant applied for benefits in October 1987, alleging a disability onset date of February 1987. *Walker*, 943 F.2d at 1258. The SSA found claimant not disabled, and claimant sought review by an ALJ. *Id.* at 1258. In April 1988, before the ALJ made his determination as to whether claimant was entitled to an

award, claimant returned to work "out of economic necessity." *Id.* at 1258. On September 27, 1988, six months after claimant began working, the ALJ found that because claimant had worked, he had engaged in SGA and should therefore be denied benefits. *Id.* at 1258.

The Court of Appeals vacated and remanded, holding that claimant's work activity between April and September 1988 constituted a trial work period. *Id.* at 1259–60. The Court declined to follow SSR 82–52, finding that the ruling was not entitled to deference as it is plainly erroneous and inconsistent with the Act. *Id.* at 1260. It reasoned that "a fair reading of the Act indicates that an individual who suffers from an impairment that has lasted, or is expected to last, twelve months is entitled to disability insurance benefits, as well as a trial work period, after waiting five months." *Id.* at 1260 (construing *McDonald v. Bowen*, 818 F.2d 559 (7th Cir. 1986)).[3] *See supra* 42 U.S.C. § 423(a)(1).

In rejecting SSR 82–52, the Court also rejected Acquiescence Ruling 88–3(7), which limited the scope of *McDonald* to cases arising in the Seventh Circuit. *Id.* at 1259. In doing so, it employed the reasoning that AR 88–3(7), because it was based on SSR 82–52, was also plainly erroneous and inconsistent with the Act. *Id.* at 1259–60. Since the decision in *Walker*, the SSA has issued another Acquiescence Ruling, limiting the effect of *Walker* to the Tenth Circuit. AR 92–6(10). Nonetheless, courts outside the Tenth Circuit have followed *Walker* despite AR 92–6(10). *See Hunter v. Department of Health and Human Services*, 851 F.Supp. 75 (E.D.N.Y.1994); *Mulderig v. Sullivan*, 1993 WL 22152, 1993 U.S. Dist. LEXIS 908 (S.D.N.Y.1993); *Lacy v. Sullivan*, 810 F.Supp. 1038 (S.D. Iowa 1992); *Jenkins v. Heckler*, 783 F.Supp. 998 (D.S.C.1992).

---

**3.** In *Walker*, the claimant alleged disability as of February, 1987, and returned to work in April 1988. Therefore, his return to work occurred over twelve months after his alleged disability onset date, taking the case outside of the literal scope of SSR 82–52. However, courts of various jurisdictions have applied the *Walker* rationale to cases where the claimant began working before approval of an award and five months after the disability onset date. *See Hunter v. Department*

of Health and Human Services, 851 F.Supp. 75 (E.D.N.Y.1994); *Mulderig v. Sullivan*, 1993 WL 22152, 1993 U.S. Dist. LEXIS 908 (S.D.N.Y. 1993); *Lacy v. Sullivan*, 810 F.Supp. 1038 (S.D. Iowa 1992); *Jenkins v. Heckler*, 783 F.Supp. 998 (D.S.C.1992). Therefore, *Walker* has come to represent the proposition that a claimant may engage in a trial work period before approval of a disability insurance award and after waiting five months from the disability onset date.

### C. TREATMENT OF THE "TRIAL WORK PERIOD" IN THE THIRD CIRCUIT

While the Third Circuit has not ruled on this issue, at least two courts in this district have come to contrary results. In *Baber v. Sullivan*, No. 85–3980, 1990 WL 24932 (D.N.J. Mar. 5, 1990), the District Court held that a claimant's trial work period could begin before the SSA awarded the claimant a disability insurance award so long as that trial work period began five months after the disability onset date. *Id.* at *3. In reaching its result, the *Baber* court relied on *Campbell v. Califano*, 483 F.Supp. 1306 (E.D.Pa.1980). The *Campbell* court concluded that the trial work period could begin five, rather than twelve, months after the disability onset date because "[s]uch a result is in keeping with the liberal construction of the Act which should be construed in favor of the claimant if any basis exists under which relief may be granted." *Campbell*, 483 F.Supp. at 1309 (construing *Randall v. Flemming*, 192 F.Supp. 111 (W.D.Mich.1961)).

In *Monahan v. Shalala*, No. 91–5565 (D.N.J. Aug. 9, 1993), however, the court, relying on SSR 82–52, denied claimant benefits because he engaged in work activity before the approval of a disability award and before twelve months had passed since his disability onset date. *Id.* at 31. The court held that "a claimant becomes entitled to disability benefits [only] after he or she is adjudicated disabled." *Id.* at 31. For this reason, according to the court, an individual cannot engage in a trial work period until after the individual is adjudicated disabled. *Id.* at 31. The court reasoned that although the Secretary was precluded from considering work done during a trial work period in determining whether a disability has *ceased* during such period, he was not precluded from examining claimant's employment prior to a disability insurance award to determine whether claimant was in fact disabled in the first place. *Id.* at 28 (quoting 42 U.S.C. § 423(c)(2)).

### D. ANALYSIS

In deciding whether to follow SSR 82–52, this Court must "accord considerable defer-ence to the Secretary's interpretation of the SSI statute." *Beatty v. Schweiker*, 678 F.2d 359, 360 (3rd Cir.1982) (citing *EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Therefore, the Court will uphold the Secretary's interpretation of the regulations "unless it is plainly erroneous or inconsistent with the regulations." *Id.* at 360 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

■ Despite this level of deference, the Court finds that SSR 82–52 is plainly erroneous and inconsistent with the Act. The SSA originally found that claimant, on her disability onset date, expected that she would be unable to engage in any substantial gainful activity because her multiple sclerosis would last for a continuous period of not less than 12 months. Therefore, under the Act, she was disabled. *See* 42 U.S.C. § 423(d)(1)(A). Furthermore, after she waited the requisite five month waiting period, she became entitled to disability insurance benefits and a trial work period regardless of whether or not her award was approved. *See* 42 U.S.C. § 423(a)(1) *and* (c)(2). She did, in fact, engage in a trial work period after both filing for her benefits and waiting for five months from her disability onset date; therefore, this work period can not be used by the SSA to determine whether claimant's disability had ceased.

SSR 82–52 simply does not comport with the plain language of the Act. SSR 82–52 makes the timing of the trial work period contingent upon the approval of a disability insurance benefit award. Nowhere does the Act mention approval of the award in connection with the trial work period. Instead, the Act and applicable regulations clearly state that an individual is entitled to a trial work period five months after the disability onset date so long as she has already applied for an award. SSR 82–52 cannot alter the plain meaning of this statute.

The Court also finds *Monahan* unpersuasive. Because the Act does not condition

disability status on the receipt of an award, but rather conditions receipt of an award on disability status, *see* 42 U.S.C. § 423(a)(1), work done after entitlement to a disability insurance award but before actual granting of the award cannot be used to show that there was no disability in the first place. Rather, this work should be regarded as work done after the onset of disability. If this work is done after the five month waiting period, the work should be regarded as a trial work period regardless of whether or not an award was granted.

In support of SSR 82–52, defendant cites authorities that have held that claimants are not entitled to a trial work period before *applying* for disability insurance benefits. *See Mullis v. Bowen,* 861 F.2d 991 (6th Cir. 1988); *Cieutat v. Bowen,* 824 F.2d 348 (5th Cir.1987); *Nappa v. Secretary of Health and Human Services,* 731 F.Supp. 579 (E.D.N.Y. 1990). However, these authorities are readily distinguishable from the present case because claimant in this case did not engage in work activity until after she applied for benefits. Indeed, this Court has not found a single reported case following SSR 82–52.

Defendant's reliance on 20 C.F.R. 404.303 is also misplaced. Under 20 C.F.R. 404.303, "*[e]ntitled* means that a person has applied and has proven his or her right to benefits for a period of time." 20 C.F.R. 404.303 (emphasis in original). Defendant has argued that this section indicates that the defendant be adjudged disabled by the Secretary in order to be considered "entitled" to benefits. However, as explained earlier, § 423(a)(1) plainly states that an individual becomes "entitled" to benefits five months after her disability onset date and not when the SSA makes its formal disability determination. The regulations cannot be read to change the plain meaning of the statute.

Furthermore, 20 C.F.R. 404.1592(e) states that the trial work period cannot begin until after the claimant has filed her application for disability insurance benefits. § 423(a)(1)(C) similarly states that a claimant is not "entitled" to benefits until the claimant makes application for benefits. Therefore, a claimant who has not yet filed an application is not "entitled" to benefits, and cannot begin a trial work period. However, if the Act also required that a claimant receive a formal SSA disability award before beginning a trial work period, 20 C.F.R. 404.1592(e) would be superfluous. A claimant cannot receive an award until after she has made an application. Therefore, if the regulations truly required a claimant to receive an award before beginning a trial work period, there would be no need for a regulation stating that a trial work period cannot begin before the filing of the application.

Furthermore, while the facts surrounding claimant's disability do not govern the Court's interpretation of the law, we find that they do support our conclusion. Claimant's multiple sclerosis is a degenerative disability that may eventually leave her irreversibly incapacitated. While an individual suffering from multiple sclerosis may experience periods of brief remission after the onset of her disability, periods during which the individual may be able to engage in work activity, these periods of remission may become shorter and less frequent as the disease progresses. For this reason, the Sixth Circuit has held that "special consideration [must be given] to the temporary nature of work periods of persons with degenerative diseases such as multiple sclerosis," *Mullis v. Bowen,* 861 F.2d 991, 993 (6th Cir.1988) (construing *Parish v. Califano,* 642 F.2d 188, 193 (6th Cir.1981), and that "the concept of a trial work period may be applied [in cases where the claimant is a victim of a degenerative disease even] to the time before there is an application for benefits." *Id.* at 993. While we do not hold that work activity should be designated as a trial work period before the claimant applies for benefits when the claimant is a victim of a degenerative disease, the Sixth Circuit's rationale provides additional support for our reading of the Social Security Act.

### V. *CONCLUSION*

The Secretary's conclusion was premised upon SSR 82–52, which the Court finds runs contrary to the plain language of the Act. Furthermore, because the case presents no additional contested issues of fact, the Secretary's decision will be reversed and its original determination of a December 25, 1990,

disability date will be reinstated. *See Baber v. Sullivan,* No. 85–3980, 1990 WL 24932, at *4 (D.N.J.1990).

An appropriate Order will be entered on even date herewith.

