_____

96-1096
_____

Donald A. Newton,                          *
                                           *
     Plaintiff-Appellant,                  *
                                           *   Appeal from the United States
     v.                                    *   District Court for the
                                           *   Southern District of Iowa.
Shirley S. Chater,                         *
Commissioner of Social                     *
Security,                                  *
                                           *
     Defendant-Appellee.                   *
                              _____

                    Submitted:   June 14, 1996

                    Filed:  August 9, 1996
                              _____

Before MORRIS SHEPPARD ARNOLD and MURPHY, Circuit Judges, and JACKSON,[*]
     District Judge.
                              _____

MURPHY, Circuit Judge.


     Donald A. Newton appeals from a district court decision affirming the
Social Security Commissioner's denial of his applications for disability
insurance and supplemental security income benefits.  We reverse and
remand.

                                   **I.**


     Newton applied for disability insurance benefits on April 22, 1993
under Title II of the Social Security Act, 42 U.S.C. § 401 et

_____

     [*]The HONORABLE CAROL E. JACKSON, United States District
     Judge for the Eastern District of Missouri, sitting by
     designation.

seq., and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. He alleged disability from October 30, 1992, based on illiteracy, memory lapses, alcoholism, and hypertension. His applications were denied initially and on reconsideration.

A hearing before an administrative law judge (ALJ) was held in November 1994. Newton was 37 years old at the time. His previous jobs included unskilled or semi-skilled work pouring iron, cutting sod, sweeping floors, applying hot roofing materials, and doing construction tasks. These jobs involved medium to very heavy labor, did not require reading or writing, and were not highly technical in nature.

Since his alleged onset date of disability, Newton has worked at two jobs. During June to September of 1994, he worked at the Black Hawk Foundry as a grinder and a metal beater, which involved carrying weights between 150 to 200 pounds. He earned between $6.50 and $7.26 per hour and worked at least forty hours per week. He testified at the hearing that he drank during lunch, but stated he was fired because of an eye injury, from which he has fully recovered. Newton also worked for one week with Rose's Wood Products in October 1994, but said he quit because his drinking prevented him from going to work in the mornings. He testified that he has looked for other work.

According to intelligence tests, Newton has an I.Q. score of 77, which is in the borderline range of mental deficiency. Newton testified that he attended special education classes until the ninth or tenth grade, but that his reading and arithmetic abilities were at a second grade level. He said he could not read street signs but did read comic strips and letters from his girlfriend. He also alleged difficulties with counting and making change and claimed to have trouble remembering things. Near the end of the hearing, however, he stated he had been able to concentrate and

answer questions during it.

Several medical reports were also introduced into evidence. Stephen Paul Singley, M.A., evaluated Newton in May 1993. Newton was easily able to recall his date of birth, the address where he had lived for one month, and several things about his past. Singley concluded that Newton might have dyslexia and was "quite incapable . . . of maintaining competitive employment" if his daily functioning was similar to that during the interview. Dr. Norman A. Scott reviewed Newton's medical records in July 1993 and concluded that he had moderate deficiencies of concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner. Dr. Scott nevertheless concluded that Newton was capable of completing independent simple activities. Dr. Janet S. McDonough reached a similar conclusion based on her review in November 1993 of Newton's records, reporting that he could concentrate well enough to complete simple, routine tasks.

Newton testified that he suffered from uncontrollable alcoholism. He claimed two different companies had fired him for drinking on the job and that he had been arrested three times for driving under the influence. He stated he drank daily, using money from collected cans to fund his habit. He has been through eight treatment programs and says he often starts drinking within a few days after finishing a program. Newton's treating physician, Dennis Straubinger, D.O., reported in March of 1993 that Newton was no longer using alcohol and that he was capable of working as of March 25, 1993. Dr. D.V. Domingo, a psychiatrist who examined Newton in May 1993, also reported that Newton had stated he was no longer using alcohol, which was substantiated by a lack of alcohol smell on his breath. Dr. Domingo concluded that if Newton stayed sober, he could carry out instructions, interact appropriately with people around him, and maintain attention and concentration for simple jobs such as janitorial work.

Newton was suffering no physical impairments except for numbness in his right fingers due to an injury some eight years before the hearing. (He writes with his left hand, but claimed he did most things with his right hand.)  Despite surgery to repair a nerve in his right wrist, he said certain fingers could not feel objects.  He stated on a prehearing questionnaire that he did not take painkillers or any kind of medication.

Newton testified that his daily activities included riding his bike to collect cans for money, visiting with his girlfriend and friends, walking around, smoking cigarettes, occasional vacuuming, and fishing with his eleven-year-old son.  He also reported on his benefits application that he liked to watch race cars and television.

The ALJ posed two hypothetical questions to the vocational expert, G. Brian Paprocki.  The first hypothetical described a younger individual with no physical limitations, a ninth or tenth grade education, a borderline range of intelligence, a minimal ability to read and write, an ability to perform only simple tasks, and an ability to control a drinking problem.  The vocational expert testified that such a person could work as a foundry worker, commercial cleaner, roofer, or horticultural worker.  In the ALJ's second hypothetical, the individual had all of the above limitations plus an inability to control his drinking.  The expert assumed such a person would not regularly report to work and could therefore not hold employment.  Newton's attorney then asked the expert about the effect of the reported deficiency in concentration, persistence, and pace on Newton's ability to work.  The expert responded that these basic work habits were necessary for a person to maintain employment, and that a moderate deficiency in these abilities would cause problems on an ongoing daily basis, "regardless of . . .  what the job required from a physical or skill standpoint."

The ALJ issued a decision in February 1995, denying disability insurance benefits. The ALJ found that Newton was not disabled due to the performance of substantial gainful activity from June to September 1994 at the Black Hawk Foundry. The ALJ found that Newton had borderline intellectual functioning and a history of substance abuse. The ALJ indicated on an attached Psychiatric Review Technique Form that Newton often had deficiencies of concentration, persistence, or pace, but found him capable of maintaining concentration and attention for simple work. The ALJ stated that Newton had no impairment or combination of impairments sufficient to meet the requirements in the regulations. The ALJ further noted that Newton's recent foundry work showed he had no physical limitations, he could control his drinking problem, and his daily activities were not greatly restricted. Based on these findings, the ALJ concluded Newton could perform his past work as a roofer, commercial cleaner, horticultural laborer, and foundry worker.

Newton pursued his administrative claim further and then turned to federal court. The Appeals Council denied review in May 1995. The district court affirmed the Commissioner's decision in December 1995, concluding that it was supported by substantial evidence on the record as a whole and not affected by any error of law. On appeal, Newton argues that he was entitled to a trial work period in 1994, that the hypothetical question posed to the vocational expert erroneously excluded his deficiencies of concentration, persistence, or pace, that the ALJ improperly discredited his complaints of uncontrollable alcoholism, and that the evidence supported a finding of disability.

**II.**

The Commissioner's decision to deny disability insurance benefits will be affirmed unless it is unsupported by substantial evidence in the record as a whole or based on legal error. Keller

5

v. Shalala, 26 F.3d 856, 858 (8th Cir. 1994).  Our review encompasses evidence that both supports and detracts from the Commissioner's decision. Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996).

**A.**

Newton argues that his work from June to September 1994 should not have been considered as evidence of substantial gainful activity showing that he was not disabled.  He argues that his work constituted a trial work period which could not be considered in determining his eligibility for disability insurance benefits.  The Commissioner responds that Newton should not be allowed to raise the issue for the first time on appeal and, in any event, he is not entitled to a trial work period because he was never awarded benefits.  She contends that the ALJ properly considered Newton's 1994 work in assessing his alleged disability.

Newton asserted in his district court brief that he was "entitled to a trial work period" and that his work during 1994 should not be fatal to his disability claim.  That brief cited the trial work provisions in both the federal statutes and regulations, as well as Lacy v. Sullivan, 810 F. Supp. 1038, 1040-42 (S.D.Iowa 1992), which discussed the effect on a disability claim of activity during a trial work period.  Newton has sufficiently raised the trial work period issue, and it is properly before us.

Under the Social Security Act, every insured individual under the age of 65 who has filed an application for benefits and is under a disability is entitled to benefits.  42 U.S.C. § 423(a)(1).  Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A person

6

becomes entitled to disability benefits for each month after five consecutive months of being under a disability. Id. §§ 423(a)(1)(D) & (c)(2)(A).

A determination of disability is made according to a five-step sequential process. See 20 C.F.R. § 404.1520. These steps take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the claimant's impairments prevent a resumption of work done in the past, and whether the claimant's impairments preclude any other type of work. Id. The regulations also require a separate sequential process for evaluating allegations of mental impairments in adult claimants. See id. § 404.1520a(a).

If a claimant is working in a substantial gainful activity, he will be considered not disabled under step one regardless of his medical condition, age, education, and work experience. Id. § 404.1420. Any work performed during a period of claimed disability may show that a claimant can engage in substantial gainful activity. Id. Relevant factors include amount of earnings and whether the work was conducted in a sheltered or special environment. Id. § 404.1574.

Work done during a trial work period, however, may not be considered in determining whether a claimant's disability has ceased during that period.[2] 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a); Walker v. Secretary of Health and Human Services, 943 F.2d 1257, 1260 (10th Cir. 1991); McDonald v. Bowen, 818 F.2d 559, 565 (7th Cir. 1986); Hunter v. Department of HHS, 851 F.

---

[2]Our review on this issue is limited to Newton's claim for disability insurance benefits because trial work provisions no longer apply to claims for supplemental security income benefits. See Employment Opportunities for Disabled Americans Act, Pub.L. No. 99-643, 100 Stat. 3574 (1986) (amending 42 U.S.C. § 1382c by eliminating provisions on trial work period).

Supp. 75, 79 (E.D.N.Y. 1994); <u>Lacy v. Sullivan</u>, 810 F. Supp. 1038, 1041 (S.D.Iowa 1992); <u>Tepfer v. Secretary of HHS</u>, 712 F. Supp. 156, 158 (W.D.Ark. 1989). This provision enables a claimant to test his or her ability to work. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a). Work performed during the trial period may only be considered in determining whether a disability ended at some point after the trial period. 20 C.F.R. § 404.1592(a). In addition, a claimant's disability may be found to have ended during the trial work period "if the medical or other evidence shows that [the claimant is] no longer disabled." <u>Id.</u> § 404.1592(e)(2).

In order to be entitled to a trial work period, a claimant must be entitled to disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.1592(d)(2)(i). As noted, a claimant becomes entitled to disability insurance benefits after filing an application and waiting five consecutive months during which he or she is under a disability that has lasted or can be expected to last twelve months. 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A). The trial work period begins with the month in which the individual becomes entitled to disability insurance benefits, but it may not begin before the month in which the application for benefits is filed. <u>Id.</u> § 422(c)(3); 20 C.F.R. § 404.1592(e). The trial period ends at the close of the ninth month, whether consecutive or not, in which services have been performed, or at the month in which evidence besides the trial work shows the claimant is not disabled. <u>Id.</u> § 404.1592(e)(1) & (2).

In this case, the ALJ's decision of no disability was premised on Newton's work at the Black Hawk Foundry during 1994. At step one of the sequential evaluation process the ALJ found that Newton's work from June to September of 1994 amounted to substantial gainful activity and that he was therefore not disabled. The ALJ then went on to evaluate Newton's allegations of disability based on his alleged learning disability, alcoholism, memory lapses, and hypertension. The ALJ cited the 1994 work as

8

evidence that Newton's daily activities were fairly unrestricted, he had no physical limitations, he could control his use of alcohol, and his alleged impairments did not prevent him from returning to his past relevant work.

The ALJ erred in basing a decision of no disability on Newton's 1994 work without considering whether it qualified as falling within a trial work period. If Newton was disabled for five consecutive months before he began work in June 1994, then he would have been entitled to disability insurance benefits and a trial work period. 42 U.S.C. §§ 422(c)(3) & 423(a)(1); 20 C.F.R. § 404.1592(e). If he was eligible for a trial work period in June 1994, then his services for nine months thereafter would constitute trial work. 20 C.F.R. §§ 404.1592(a) & (e). His trial work could only show that his disability ended at some point <u>after</u> his trial period. <u>Id.</u> (emphasis added). The Commissioner could determine that his disability ended during the trial work period, however, based on medical or other evidence besides his trial work. <u>Id.</u> § 404.1592(e)(2).

The Commissioner argues that Newton was not entitled to a trial work period because he had not yet been awarded benefits. She cites 20 C.F.R. § 404.1592(d)(1), which states that "[t]hose who are receiving disability insurance benefits . . . generally are entitled to a trial work period" and Social Security Ruling 82-52, which states that when a "return to work demonstrating ability to engage in [substantial gainful activity] occurs before approval of the award and prior to the lapse of the 12-month period after onset, the claim must be denied." She interprets these provisions to mean that only those claimants who are awarded and receiving benefits may have a trial work period.

While courts must give deference to an agency's interpretation of its own regulations, courts are not bound by them and they are not conclusive. <u>White Industries, Inc. v. F.A.A.</u>, 692 F.2d 532,

9

534 (8th Cir. 1982).  Social Security rulings are intended to bind only the Social Security Administration.  20 C.F.R. § 422.406(b)(1).  They have neither the force nor effect of law or Congressionally promulgated regulations.  See Heckler v. Edwards, 465 U.S. 870, 874 n.3 (1983).

The cited regulation, 20 C.F.R. § 404.1592(d)(1), does not exclude those who have not yet received benefits from engaging in trial work.  That provision does not state that only those who are receiving benefits are entitled to a trial work period, only that they "generally are entitled" to one.  The only express requirement in the regulations for entitlement to a trial work period is that a person be "entitled" to disability insurance cash benefits.  Id. § 404.1592(d)(2)(i).  Under the statute, entitlement to such benefits is not conditioned upon receipt of a benefits award, but only upon the passage of five consecutive months of disability lasting twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A).  A claimant may thus actually become entitled to disability benefits before adjudication of his claim, and then the claimant's trial work period would also begin before an award of benefits is approved.

The agency ruling, SSR 82-52, is inconsistent with the statutory provisions governing the start of a trial work period.  Under SSR 82-52, a trial work period may begin only after benefits have been awarded and the claimant has had a disability for twelve consecutive months.[3]  According

---

[3]It is also unclear whether SSR 82-52 even applies in this case.  The ruling provides that a disability claim should be denied if the claimant works before an award is approved and before "the lapse of the 12-month period after onset [of disability]."  The ruling does not elaborate on whether the period of twelve consecutive months begins immediately following the alleged onset disability date, or at some point after the onset date.  If the former interpretation were correct, then SSR 82-52 would not seem to apply here because Newton's 1994 work at the Black Hawk Foundry occurred well after the twelve consecutive months following his
alleged onset disability date of October 30, 1992.  Neither party addressed this possibility in their briefs, and we have found no case law on point.  In light of our conclusion that Newton may be entitled to a trial work period under the regulations, we find it unnecessary to resolve this issue.

10

to the statute and regulations,

though, a trial work period starts in the month that entitlement to disability benefits begins, which is the month following five consecutive months of being under a disability that has lasted or is _expected_ to last a total of twelve continuous months. 42 U.S.C. § 423(d)(1)(A) (emphasis added); 20 C.F.R. § 404.1592(e); _Walker_, 943 F.2d at 1260; _Hunter_, 851 F. Supp. at 79; _Lacy_, 810 F. Supp. at 1041. In other words, under the statute, a claimant need not have had a disability for twelve consecutive months before he may test his ability to work.

Moreover, conditioning trial work periods upon prior receipt of benefits would subject claimants to the vagaries of the administrative office in which the claim was filed. An individual whose claim is efficiently processed might be able to begin trial work after expiration of the five-month waiting period and award of benefits, in contrast to another claimant who filed in a busier or less efficient office. _See_ _Tepfer_, 712 F. Supp. at 159. Claimants could be discouraged from working prior to an adjudication, and, under SSR 82-52, they would be forced to remain idle for at least one year. This situation would be inconsistent with the trial work period policy to encourage people to return to work as soon as possible. 42 U.S.C. § 422(c); _Walker_, 943 F.2d at 1260; _McDonald_, 818 F.2d at 1264; _Hunter_, 851 F. Supp. at 78.

The language in the statutes and regulations does not require that a trial work period be conditioned on a prior receipt of benefits and/or the lapse of a twelve month period of disability. _See_ 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a); _Walker_, 943 F.2d at 1260; _McDonald_, 818 F.2d at 565; _Hunter_, 851 F. Supp. at 79; _Lacy_, 810 F. Supp. at 1041; _Tepfer_, 712 F. Supp. at 158. The

12

Commissioner thus erred in considering Newton's summer 1994 work as evidence of substantial gainful activity to support a finding of no disability without first determining whether he had been entitled to a trial work period during that time.

**B.**

Newton also challenges a hypothetical question posed to the vocational expert. In support of a finding of no disability, the ALJ cited the vocational expert's response to a hypothetical question which described a person with a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, a capacity for simple jobs, and a demonstrated ability to control his drinking problem. Newton argues that this question was defective because it omitted medical evidence of his deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner.

A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant. Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). A vocational expert cannot be assumed to remember all of a claimant's impairments from the record. Whitmore v. Bowen, 785 F.2d 262, 263-64 (8th Cir. 1986). An expert's testimony based upon an insufficient hypothetical question may not constitute substantial evidence to support a finding of no disability. Id.

There is no dispute in the medical evidence that Newton suffers from deficiencies of concentration, persistence, or pace, or that these were not mentioned in the hypothetical question. Dr. Scott found that Newton had moderate deficiencies in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a

13

schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work week, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. McDonough found that Newton was markedly limited in his ability to carry out detailed instructions and moderately limited in his ability to maintain attention and concentration for extended periods. Consistent with these findings, the ALJ stated on the Psychiatric Review Technique Form attached to the decision that Newton "often" has deficiencies of concentration, persistence, or pace.

The vocational expert could not have been expected to remember Newton's deficiencies in these areas from the record alone. See Whitmore, 785 F.2d at 263-64. Since these deficiencies were not included in the hypothetical question, the expert did not base his opinion on the full extent of Newton's limitations and his testimony could not have constituted substantial evidence to support the Commissioner's decision. Id.

The Commissioner contends that these deficiencies did not have to be included in the hypothetical question because the question limited Newton's capabilities to simple jobs. She notes that Drs. Scott and McDonough concluded that Newton's concentration problems did not significantly limit his abilities to follow short and simple instructions and make simple work-related decisions, and that Dr. Domingo determined Newton could maintain concentration for simple work.

The vocational expert stated on cross-examination, however, that Newton's concentration and persistence problems related to basic work habits needed to maintain employment. A moderate deficiency in these areas, the expert testified, would cause problems on an ongoing daily basis, "regardless of . . . what the job required from a physical or skill standpoint." The expert's original response to the hypothetical question may thus have been

14

different if the question had already described all of Newton's functional limitations.  See Smith, 31 F.3d at 717.  Any hypothetical question on remand should include Newton's deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work.

c.


Newton contends that the ALJ erroneously discredited his complaints of uncontrollable alcoholism by failing properly to apply the standards set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted).  He asserts that the overwhelming evidence shows he cannot control his drinking and he is thereby incapable of working.


In order to establish disability due to alcoholism, a claimant must show that he has lost self-control to the point of being "impotent to seek and use means of rehabilitation" and that his disability is encompassed by the Act.[4]  Starr v. Sullivan, 981 F.2d 1006, 1008 (8th Cir. 1992) (citation omitted).  A key factor in assessing a claimant's ability to control his use of alcohol is his ability to engage in substantial gainful activity. Mapes, 82 F.3d at 263.  The claimant's credibility is also assessed in relation to daily activities; the duration, frequency, and intensity of the

---

[4]Recent amendments to the Social Security Act eliminate alcoholism as a basis for obtaining disability insurance and supplemental security income benefits.  See Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852-53 (amending 42 U.S.C. §§ 423(d)(2) & 1382(c)).  For claims decided by the Commissioner before March 29, 1996 (the enactment date of the amendments), disability benefits beginning on, or after, January 1, 1997 may not be based on alcoholism.  110 Stat. at 853-54.  The final administrative adjudication of Newton's claim was made in May 1995, when the Appeals Council denied Newton's request for review of the ALJ's decision.  If Newton were disabled by alcoholism, his eligibility for benefits on this basis could not extend beyond January 1, 1997.  See id.

subjective complaint; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski, 739 F.2d at 1322.

The ALJ found that Newton's alcohol usage had not been an uncontrolled or persistently significant influence on his work abilities based in part on his past twenty years of work and the 1994 work at the Black Hawk Foundry. Although Newton worked fairly consistently from 1973 through 1992, it was in October 1992 that his alcoholism became allegedly disabling. After that date, the only substantial gainful activity the ALJ found that Newton had performed was his few months of work in 1994 at the foundry. On remand, the ALJ may need to reexamine Newton's ability to control his alcohol usage depending upon its determination of the trial work period issue.

## III.

The judgment of the district court is reversed and the matter is remanded so that the court may direct further administrative proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

16