**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

---

No. 96-4116

---

Verla J. Trossauer,     *
    *
      Appellant,     *
    * Appeal from the United States
    v.     * District Court for the
    * Eastern District of Missouri.
Shirley S. Chater, Commissioner of
Social Security,     *
    *
      Appellee.     *

---

Submitted: May 23, 1997

Filed: July 14, 1997

---

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.

---

HEANEY, Circuit Judge.

Trossauer filed an application for disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401- 433 (1994), on March 2, 1992. She alleged disability as of April 2, 1974 due to recurrent bladder problems. The Social Security Administration denied Trossauer's application initially and on reconsideration. After a hearing, an administrative law judge (ALJ) found that Trossauer was

not disabled at any time on or before June 30, 1975, the
date she was last insured for disability-

benefits.[1]  On September 16, 1993, the Appeals Council of the Social Security Administration denied Trossauer's request for review.  Trossauer filed a complaint requesting judicial review of the Commissioner's decision in the United States District Court for the Eastern District of Missouri.  The district court affirmed the administrative decision and Trossauer appeals.  We reverse.

At the time of the hearing before the ALJ, Trossauer was sixty-two years old.  She has an eighth-grade education and only a limited work history due, in large part, to her recurrent health problems throughout her adulthood.  Her most recent employment was as a nurse's aid.  She stopped working in 1974 because of recurring hernias and bladder infections.  All parties agree that Trossauer is currently disabled within the meaning of the Act.  To qualify for benefits, however, Trossauer must demonstrate that she was disabled on or before June 30, 1975 when she last met the earnings requirements for disability benefits.

Hampered by old and incomplete medical records relating to the key period between 1974 and 1975 and unpersuaded by the testimony of Trossauer's treating physician, the ALJ found "no evidence of a severe impairment [representing] more than a slight abnormality having more than minimal effect on her ability to

---

[1]To meet the special, insured-status requirements of the Act, an applicant's earnings must establish at least twenty quarters of eligibility in the forty-quarter period ending with the first quarter of disability.  See 42 U.S.C. §§ 416(l)(3)(B), 423(c)(1)(B); 20 C.F.R. § 404.130.

function prior to June 30, 1975." Accordingly, the ALJ denied her claim for benefits. Our obligation in reviewing this decision is to determine whether it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); <u>Whitehouse v. Sullivan</u>, 949 F.2d 1005, 1006 (8th Cir. 1991). Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusion. <u>Whitehouse</u>, 949 F.2d at 1006 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). In assessing

4

the substantiality of the evidence, we must consider evidence that detracts from the decision as well as evidence that supports it. <u>Locher v. Sullivan</u>, 968 F.2d 725, 727 (8th Cir. 1992) (citing <u>Baker v. Heckler</u>, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to being followed by several specialists over the years, Trossauer had been treated by her primary physician, Dr. Frank J. Niessen, since 1954. According to Dr. Niessen's testimony, he remembers Trossauer's medical history well because it has been unusual. In the late 1950s, Dr. Niessen treated Trossauer's tuberculosis of the uterus, a rare condition that Dr. Niessen has seen only this once during his career. Dr. Niessen performed a total hysterectomy on Trossauer in 1958. In 1973 and 1974, Dr. Niessen treated Trossauer for menopause syndrome and recurrent bladder infections and stated that he saw her approximately once per month during that period. In 1974, Dr. Niessen referred Trossauer to a urologist, Dr. Gurshani, because her bladder problems caused him to suspect that the tuberculosis had spread to her bladder. Although Dr. Niessen's fear proved unfounded, Trossauer was treated regularly by Dr. Gurshani over the next decade. He performed at least five operations on her, including a Marshall-Marchetti

procedure in 1976,[2] and the complete removal of her bladder sometime in the 1980s.

Dr. Niessen testified that he does not believe Trossauer was able to work as of 1974 because, due to her severe bladder infections and incontinence, "she was going to the bathroom every ten minutes." When questioned about how he could remember

_____

[2]A Marshall-Marchetti procedure is an operation for the correction of stress incontinence in which the anterior portion of the urethra, vesical neck, and bladder are sutured to the posterior surface of the pubic bone. (Appellee's Br. at 3 n.8 (citing Dorland's Medical Dictionary at 1182 (28th ed.)).) According to Dr. Niessen, the fact that Trossauer underwent this operation in 1976 supports Trossauer's claim that she was disabled by bladder trouble in 1974 because the operation is only done after a patient has had "tremendous problems with her bladder that would be reflected by, say, two or three years of infection, inability to hold her urine." (Hr'g Tr. at 29.)

the eighteen-year-old bathroom habits of one patient among thousands he had treated, the doctor responded that he remembered Trossauer's case because it was unusual and because he had referred her to the urologist for possible tuberculosis of the bladder.

Dr. Niessen could not produce any written medical records relating to his care of Trossauer during the relevant period because the old records had been expunged as part of the ordinary course of his practice. Dr. Niessen's statements, however, are consistent with other evidence suggesting Trossauer was unable to work after 1974. Trossauer testified that, in addition to hernias that prevented her from lifting, her bladder infections caused her severe burning and itching. She had to catheterize herself and had trouble controlling her urination. She testified that she went to the bathroom about every ten minutes and that the burning caused her to scream when she urinated. She also told the ALJ that by 1974 she could not perform housework or other activities other than to "[lay] in bed and cry." Trossauer's husband confirmed that his wife has not been able to perform any work in the house since 1974. He testified that he hired a person to come in to do the heavy housework and that he has performed the lighter housework and cooking himself since 1974. He recounted that his wife had difficulty standing up and that he often assisted her use of the bathroom.

In rejecting Trossauer's claim, the ALJ discredited Dr. Niessen's testimony because he doubted that the doctor could remember the frequency with which Trossauer had to urinate in 1974 in light of the thousands of

7

patients he admitted to treating over the years.  The ALJ stated that he was instead relying on a hospital record from an October 1975 hospitalization of Trossauer. Because that record did not explicitly mention Trossauer's frequent urination in 1974, the ALJ concluded that the record was inconsistent with Dr. Niessen's testimony.  Moreover, the ALJ concluded that because there was no record of Trossauer being hospitalized for her condition until October 1975 she could not have been disabled on or before June 30, 1975.  In any event, the ALJ summarily found that Trossauer was not disabled until her bladder was removed in the 1980s.

The ALJ's conclusion is not substantially supported by the record as a whole. Most important, we agree with Trossauer that the ALJ erred in discrediting the testimony of Dr. Niessen. "The opinion of a treating physician is entitled to great weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991) (quoting Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991)). Although the medical records could be more complete with respect to the crucial time period, none of the available records-- including the report from the October 1975 hospitalization--contradict Dr. Niessen's testimony in any respect. In fact, the overall record fully supports Dr. Niessen's assertion that Trossauer was disabled by severe bladder problems in 1974, which resulted in drastic surgery in 1976 and, ultimately, the total removal of the bladder. Dr. Niessen could be expected to be quite familiar with the medical history of a patient he had treated for almost forty years. Moreover, Dr. Niessen offered a specific, reasonable explanation for his detailed recollection of Trossauer's case. The ALJ simply erred in refusing to give due weight to the doctor's testimony.
.

On this record, we believe that reversal, rather than remand, is warranted. See Fowler v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) (reversal is appropriate where the record overwhelmingly supports a disability and remand would merely delay the receipt of benefits to which claimant is entitled). Dr. Niessen's testimony, in combination with the statements of Trossauer and her husband and the entire body of medical evidence

9

presented, overwhelmingly supports a finding that Trossauer was disabled sometime in 1974, but in any event, prior to the expiration of her insured status on June 30, 1975. We therefore reverse the district court and direct it to issue an order requiring the Social Security Administration to grant Trossauer's claim for benefits and to provide her with retroactive benefits in the amount to which she is entitled under the applicable statutes and regulations.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.