**Sandra J. BRANSON, Plaintiff,**

v.

**John J. CALLAHAN, Commissioner of Social Security, Defendant.**

No. C96–0333.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

April 21, 1998.

Jeffrey P. Berg, Cedar Rapids, IA, for Plaintiff.

Lawrence D. Kudej, Assistant United States Attorney, Cedar Rapids, IA, Rhonda J. Wheeler, Assist. Regional Counsel, Social Security Administration, Kansas City, MO, for Defendant.

### ORDER

MELLOY, Chief Judge.

This matter comes before the court pursuant to plaintiff's November 15, 1996, complaint seeking reversal of the final decision of the Commissioner of Health and Human Services denying plaintiff's claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*

### I. Background

This action involves plaintiff's application for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, which she filed on October 11, 1994 (Tr. 122–24). Plaintiff's application was denied initially on January 26, 1995 (Tr. 125–27, 155–59), and after reconsideration on March 15, 1995 (Tr. 162–71). On March 15, 1996, following a February 7, 1996 hearing, an Administrative Law Judge (ALJ) denied plaintiff's request for disability benefits (Tr. 37–53). The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act (SSA). On September 27, 1996, the Appeals Council of the Social Security Administration denied claimant's request for review (Tr. 6–7). On October 25, 1996, after consideration of additional evidence, the Appeals Council vacated its September 27, 1996 decision and issued another decision to deny review (Tr. 4–5).

The plaintiff, Sandra J. Branson, was born May 15, 1943. She has a high school education and attended college for two years. Plaintiff states that she became disabled on November 12, 1993, because of depression and a degenerative disk in her spine. She complains of chronic back and neck pain as well as depression, all of which she claims prevent her from doing her past work or any other substantial gainful activity. She rates her pain in her lower spine and upper neck as approximately four to six on a scale of ten, with ten being the most severe amount of pain; at times she claims she experiences pain of ten or more when she does not "pace herself" (Tr. 74).

Plaintiff worked at Klein Tools for 13 years but testified she was released from employment on November 17, 1993 because of downsizing (Tr. 71–2). While employed, plaintiff saw a company doctor, Dr. Boward, for six years for treatment of back and neck discomfort (Tr. 71). Dr. Boward prescribed anti-inflammatories for pain.

Plaintiff sought outpatient treatment at St. Luke's Hospital from January 21, 1992 to May 7, 1992 for treatment of upper back pain, and from September 3, 1992 to March 19, 1993 for upper extremity problems (Tr. 250–96, 199–231). The St. Luke's staff treated her with physical therapy and anti-inflammatory medication, and recommended home exercises. Electromyography and nerve conduction velocity tests of both upper extremities showed normal results. Plaintiff was able to return to work without restrictions (Tr. 220).

Plaintiff saw Dr. Ballard for a consultative physical examination on November 30, 1994 (Tr. 199–231). Plaintiff complained of pain from her neck down along her spine and claimed she had difficulty bending and numbness in her right hip (Tr. 200). Dr. Ballard found that plaintiff suffered from degenerative disc disease of the cervical and lumbar spine and early osteoarthritis of the hands (Tr. 200). Dr. Roberts, whom plaintiff also saw for treatment on December 9, 1992, and again on September 7, 1994, previously diagnosed the same disorder. Dr. Roberts first prescribed Ibuprofen for pain, then later pre-

scribed Clinoril medication and an exercise program (Tr. 247–49).

Plaintiff also saw Dr. Hansen, a psychiatrist, while she was employed. However, Dr. Hansen began treating plaintiff for depression in 1986 (Tr. 348). Dr. Hansen reported that plaintiff saw him for treatment approximately 50 times during the period beginning October 13, 1986 and lasting until October 23, 1995 (Tr. 348), although nearly half of those visits occurred during a span of less than two years after plaintiff lost her employment. Plaintiff claims the loss of her job in part caused her depression, and the break-up of her relationship with a roommate exacerbated it.

As part of plaintiff's treatment, Dr. Hansen prescribed various medications for depression, pain, and insomnia. He prescribed Zoloft for plaintiff's depression on April 4, 1994. On September 23, 1994, claimant was admitted to St. Luke's Hospital with depression and suicide ideation (Tr. 347). While plaintiff was in the hospital, Dr. Hansen changed her medication to the antidepressants Effexor and Clonopin. Plaintiff was discharged from St. Luke's Hospital on October 7, 1994 (Tr. 250–96, Exhibit 18). Follow-up visits to Dr. Hansen indicated that plaintiff demonstrated a mix of both affective improvements and mood deterioration. On February 28, 1995, Dr. Hansen changed plaintiff's medication to Serzone for her depression (Tr. 339), and later changed her medication to Luvox (Tr. 343). The record does not indicate whether plaintiff began taking medication for depression or any other mental impairment before the loss of her employment in 1993.

In addition to seeing Dr. Hansen, plaintiff also attended weekly therapy meetings for abuse victims for about four years, which were sponsored by family services (Tr. 104). Nicholas Longsworth led these meetings and testified at the hearing that he observed plaintiff in great discomfort, but also noted plaintiff discussed attempts to work again (Tr. 109). Longsworth opined that plaintiff's psychological condition would not prevent her from working (Tr. 109).

Plaintiff visited Dallas H. Bryant, Ed.D., for a psychological evaluation on January 10, 1994 (Tr. 232–35, Exhibit 13). Plaintiff took the Wechsler Adult Intelligence Scale–Revised (WAIS–R) examination and performed in the low average range of mental ability (Tr. 233). The results of the Woodcock–Johnson Psycho–Educational Battery indicated that she read independently with very modest achievement status and had mathematics and written expression skill development in the severe deficit range (Tr. 41, 233–34). Plaintiff's response to the Minnesota Multiphasic Personality Inventory–2 (MMPI–2) revealed that immediate gratification was important to her, and she was likely to respond impulsively to pleasure-oriented activities without regard to possible unpleasant consequences (Tr. 232–35). Problems of addiction are characteristic of her type of personality profile and she reported that substance abuse had been a part of her life style (Tr. 232–35).

## II. Standard Of Review

The scope of a district court's review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g), which provides in part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....

42 U.S.C. § 405(g).

In order for the court to affirm the ALJ's finding of fact, those findings must be supported by substantial evidence appearing on the record as a whole. *See Trossauer v. Chater,* 121 F.3d 341, 342 (8th Cir.1997); *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992); *Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir.1991); *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Johnson v. Chater,* 127 F.3d 756, 758 (8th Cir.1997); *Trossauer,* 121 F.3d at 342; *Cruse,* 867 F.2d at 1184; *Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986). In

assessing the substantiality of the evidence, the court must take into account evidence which fairly detracts from the ALJ's findings. *Trossauer*, 121 F.3d at 342; *Cruse*, 867 F.2d at 1184; *Hall v. Bowen*, 830 F.2d 906, 911 (8th Cir.1987). Substantial evidence requires "something less than the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse*, 867 F.2d at 1184 (quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The court must consider the weight of evidence appearing in the record and apply a balancing test to contradictory evidence. *Gunnels v. Bowen*, 867 F.2d 1121, 1124 (8th Cir.1989); *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987).

### III. ANALYSIS

Plaintiff's arguments fall under four categories: the ALJ obtained and relied on new evidence ascertained after the Social Security hearing in violation of plaintiff's constitutional rights; the ALJ did not give ample weight to the opinions of plaintiff's treating physicians; the ALJ did not factor in plaintiff's subjective complaints of pain; and the ALJ relied on an improper hypothetical in making her decision.

#### A. *The "New Evidence" Obtained Following the Hearing*

Claimant first argues that the ALJ partially relied on evidence that was obtained following the hearing in determining that Plaintiff is not disabled. Plaintiff alleges that the ALJ had a conversation with Dr. Hansen after the hearing without notifying plaintiff's attorney, violating Plaintiff's due process rights (plaintiff's brief at 8). Plaintiff states that any evidence obtained from a third party after the hearing must be disclosed to plaintiff, and plaintiff has a right to cross-examine the author of an adverse report and to present rebuttal evidence. *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir.1984); *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir.1983); *Gullo v. Califano*, 609 F.2d 649 (2d Cir.1979); *Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir.1976).

Indeed, Dr. Hansen was questioned by the ALJ about his answers to the Psychiatric Impairment Questionnaire ("Questionnaire") he completed on February 28, 1995. In her decision the ALJ cited to the exhibit containing the alleged "conversation" between the ALJ and Dr. Hansen (Tr. 348–351, Exhibit 26), of which plaintiff's brief makes note (plaintiff's brief at 8). This exhibit is a letter written by the ALJ to Dr. Hansen asking for the basis of the opinion he rendered in the Questionnaire (Tr. 348–9). The letter was written on December 8, 1995, and answered and signed by Dr. Hansen on December 20, 1995. The Social Security hearing took place February 7, 1996 (Tr. 67–120). Therefore, the letter does not indicate that the ALJ contacted Dr. Hansen after the hearing, nor is there evidence in the record documenting any other contact between the ALJ and Dr. Hansen after the hearing.[1] Furthermore, this letter cannot serve as evidence of a violation of plaintiff's due process rights. Plaintiff must have known of the letter in question because it was an exhibit to the hearing, was received into evidence on the date of the hearing, and was written before the hearing took place. Plaintiff's attorney could have questioned the ALJ on the substance of the letter at the hearing, or could have asked Dr. Hansen to be present at the hearing to clarify and answer questions about his responses in the letter. The court will not find that the ALJ violated plaintiff's due process rights simply because plaintiff's attorney did not seize the opportunity at the hearing to question Dr. Hansen and to seek clarification of his responses to the letter.

#### B. *Treating Physician*

Plaintiff contends that the ALJ improperly weighed the medical evidence, discounted the opinions of plaintiff's treating physicians, and improperly substituted her opinion for that of plaintiff's treating physician. Plaintiff argues that the ALJ's basis for discounting Dr. Hansen's opinion (that the opinion was based on Plaintiff's subjective complaints rather than his own objective evaluation) is objectionable because the only way a psychiatrist can learn of the patient's functioning is by

---

1. The court declines to consider whether a letter from an ALJ seeking clarification of a physician's opinion constitutes a post-hearing report even if it were sent after the hearing.

having the patient relay the information to him or her. Plaintiff also finds error in the ALJ's dismissal of Dr. Ballard's evaluation, and notes that the University of Iowa Pain Clinic, as well as Dr. Roberts, placed severe restrictions on plaintiff and opined that she will suffer from chronic discomfort in her lower back and cervical area.

■ In determining a plaintiff's disability status, the opinion of plaintiff's treating physician is entitled to substantial weight, unless it is unsupported by medical or diagnostic data, *Trossauer*, 121 F.3d at 343; *Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991); *Turpin v. Bowen*, 813 F.2d 165, 170 (8th Cir.1987); *Janka v. Secretary of HEW*, 589 F.2d 365, 369 (8th Cir.1978), or if it is merely conclusory. *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.1986). Although the medical diagnosis may not be arbitrarily ignored, the opinion of the treating physician on the ultimate issue is not binding. *Behnen v. Califano*, 588 F.2d 252, 254 (8th Cir.1978).

The court first considers the opinion of plaintiff's psychiatrist, Dr. Hansen, and then the opinions of those physicians who treated plaintiff for her back and neck problems.

1. *Opinion of Plaintiff's Psychiatrist*

■ The ALJ discounted Dr. Hansen's opinion because, as previously mentioned, it was based on plaintiff's subjective complaints rather than his own objective evaluation, and was inconsistent with the record as a whole (Tr. 48). The supposedly "situational" nature of plaintiff's depression factored into the ALJ's conclusion (Tr. 48).

The first issue is whether Dr. Hansen's opinion rendered in the Questionnaire sent to him by plaintiff's attorney was inconsistent with other substantial evidence in the record. The court recognizes that the ALJ was not required to believe the opinion of Dr. Hansen if, on balance, the medical evidence convinced her otherwise, or if other assessments were supported by better or more thorough medical evidence. *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir.1997) (footnote omitted) (citing *Ward*, 786 F.2d at 846). The Social Security regulations state, however, that if the treating physician's opinion on the issue of the nature and severity of the plaintiff's impairment is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. *See* 20 C.F.R. § 404.1527(d)(2). Here, Dr. Hansen's opinion in the Questionnaire is not inconsistent with other substantial evidence in the record.

Dr. Hansen stated in the Questionnaire that plaintiff endured: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; constant deficiencies of concentration, persistence or pace; and repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience an exacerbation of symptoms (Tr. 298–303). The ALJ thought that this opinion was inconsistent with Dr. Hansen's progress notes, so she sent the letter to Dr. Hansen asking him to clarify both his notes and the basis of his opinion.

The court concedes that Dr. Hansen's progress notes often describe how plaintiff demonstrated signs of improvement. On April 4, 1994, Dr. Hansen's notes reported that plaintiff was doing fairly well with mostly depressive symptoms (Tr. 313). On April 25, 1994, he reported plaintiff was doing better overall (Tr. 312). In May 1994, Dr. Hansen stated that plaintiff was not doing as well because she did not get the job she thought she would get. After being hospitalized for suicide ideation on September 23, 1994, plaintiff was discharged and reportedly was making "good progress" a few weeks later. Dr. Hansen then noted he was impressed with her progress (Tr. 334). On October 21, 1994, plaintiff reported to be feeling a little better and appeared more assertive and less hopeless, an improvement that continued through November 18, 1994 (Tr. 336–38). On November 18, 1994, plaintiff was socializing more, although Dr. Hansen was concerned about her drinking habits (Tr. 358). Dr. Hansen reported on July 31, 1995, that plaintiff was not suicidal or delusional (Tr. 343).

Regardless, there is substantial evidence in the record and in Dr. Hansen's progress notes that corroborate his conclusions in the Questionnaire. In his letter to the Disability Examiner, Dr. Hansen stated that he felt plaintiff's depression was "long-standing," and added that she suffered from bipolar disorder. Dr. Hansen observed that plaintiff

showed only mild improvements after being prescribed antidepressants, and added that her concentration was terrible (Tr. 304). In his progress notes on March 10, 1994, Dr. Hansen reported that plaintiff was "doing poorly," was unable to "concentrate at school," and felt overwhelmed with anxiety (Tr. 333). Dr. Hansen observed that plaintiff was "having troubles with depressed mood" on April 4, 1994, and prescribed more Zoloft (Tr. 313); he later increased dosage to 100 mg on May 23, 1994 (Tr. 311). On September 19, 1994, plaintiff was reported to be "really upset" and "tearful"; Dr. Hansen prescribed even more Zoloft (Tr. 308).[2] As previously mentioned, plaintiff's depression and suicidal tendencies were so severe at one point that plaintiff needed to be hospitalized (Tr. 347). These examples demonstrate there is substantial evidence in the record that is not inconsistent with Dr. Hansen's conclusions in the Questionnaire that plaintiff is psychologically impaired to the point of disability.

■ Moreover, an ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. *Groeper v. Sullivan,* 932 F.2d 1234, 1238–39 (8th Cir.1991); *see Kirby v. Sullivan,* 923 F.2d 1323, 1326–27. The ALJ's decision also must be supported by specific findings. *Id.* The same principles hold true when the ALJ decides whether to reject the opinion of a treating physician—just as the ALJ may not conclude that a claimant is disabled without providing specific findings to support that decision, the ALJ likewise may not dismiss the opinion of a treating physician without providing reasons for doing so. The Ninth Circuit addressed this point specifically and held that when an ALJ chooses to disregard the opinion of the treating physician, she must set forth clear and convincing reasons to support that decision. *See Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997); *Bunnell v. Sullivan,* 912 F.2d 1149 (9th Cir. 1990); *Magallanes v. Bowen,* 881 F.2d 747,

751, 755 (9th Cir.1989). The court finds the Ninth Circuit's reasoning persuasive, and notes that while the ALJ in this case did conclude that Dr. Hansen's statements in the Questionnaire were inconsistent with the record as a whole, she failed to provide specific reasons for doing so. The ALJ highlighted the contents of Dr. Hansen's progress notes from October 14, 1994 to October 23, 1995 (Tr. 45–46), but did not explain how these excerpts amounted to an inconsistency. To the contrary, many of these highlights support the conclusion that plaintiff is, in fact, psychologically impaired. There must be competent evidence in the record to support the conclusions of the ALJ, and the ALJ must discuss in his opinion the evidence that he considered in reaching the conclusions expressed in the decision. 20 C.F.R. § 404.1520a(c)(4). "Unless the [ALJ] explicitly indicates the weight given to all the relevant evidence, we cannot determine on review whether the findings are supported by substantial evidence." *Myers v. Califano,* 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979); *see also Cotter v. Harris,* 642 F.2d 700, 707 (3rd Cir.1981); *King v. Califano,* 615 F.2d 1018, 1020 (4th Cir.1980).

■ The ALJ intimated that she felt Dr. Hansen's opinion was not completely credible because it was based on plaintiff's subjective complaints of pain.[3] Both pain and psychiatric problems, however, fall within the same category of "nonexertional impairments," or impairments that cannot necessarily be measured or detected through objective means. *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir.1982), in turn referring to 20 C.F.R. § 404.1545(c), (d)). The Eighth Circuit does not require a disability claimant to produce objective evidence to corroborate allegations of disabling pain. *McDonald,* 698 F.2d at 365; *Cole v. Harris,* 641 F.2d 613, 615–16 (8th Cir.1981); *Brand*

---

**2.** The court notes that it is particularly significant that plaintiff was using medication for many years to help with depression and bipolar disorder (although the record does not indicate when she began using medication). While use of antidepressant medication does not by itself suggest mental impairment amounting to disability, it

certainly provides strong, supporting evidence to the treating psychiatrist's opinion that a patient is psychologically impaired.

**3.** This was the only basis articulated by the ALJ that resembled a "specific finding" in the record to support her decision.

v. Secretary of Health, Ed. and Welfare, 623 F.2d 523, 525 (8th Cir.1980); Northcutt v. Califano, 581 F.2d 164, 166 (8th Cir.1978). Likewise, because psychiatric problems and pain share the same characteristics and are considered "nonexertional impairments," plaintiff should not necessarily be required to corroborate her psychiatric problems with objective evidence either. As a result, the court finds error in the ALJ's decision to dismiss Dr. Hansen's opinion simply because Dr. Hansen stated his opinion was based on "problems [plaintiff] reports" (Tr. 349); the case law of this Circuit suggests that the nature of psychiatric impairments does not require plaintiff, or Dr. Hansen, to produce objective evidence that demonstrates such an impairment. See also Woody v. Secretary of Health and Human Services, 859 F.2d 1156, 1161 (3d Cir.1988) (suggesting that the Social Security Act, 42 U.S.C. § 423(d)(5)(A) (Supp. IV 1986), does not require that mental disability be demonstrated by objectively verifiable pain).

The ALJ also stated that plaintiff's depression was due to her loss of employment and the break-up of her relationship with her roommate, and therefore was situational in nature (Tr. 48). By characterizing plaintiff's depression as situational, the ALJ insinuated that it was not as severe or debilitating. Dr. Hansen's progress notes do not support this insinuation. First, plaintiff testified at the hearing that her depression was not caused by the breakup of her relationship with her roommate (Tr. 84). The ALJ stated that the doctors characterized plaintiff's depression as resulting from the breakup, but the court does not find support in the record for this contention. Secondly, the ALJ commented during the hearing that Dr. Hansen's progress notes do show that the severity of plaintiff's depression and suicidal tendencies increased after her roommate moved out (Tr. 331), but the progress notes also report bouts of depression before and after this particular event that were not attributed to job loss or problems with personal relationships. Based on Dr. Hansen's notes, his opinion rendered in the Questionnaire, and the record, plaintiff's depression seems better characterized as being chronic with periods of acute, heightened severity caused by particularly stressful circumstances. Therefore, the ALJ's description of plaintiff's depression as situational is unsubstantiated, and cannot help serve as substantial evidence to support her conclusion that plaintiff is not mentally impaired to the point of disability.

Based on this analysis, the ALJ erroneously discounted Dr. Hansen's testimony concerning plaintiff's mental impairments, and Dr. Hansen's opinion, as dictated in the Questionnaire, clearly should be entitled to controlling weight. There still remains, however, the fact that plaintiff began seeing Dr. Hansen in October of 1986 (Tr. 348) but continued to work until November of 1993 (Tr. 71–2). Plaintiff worked for over seven years while being treated for depression. Where an individual has worked with an impairment over a period of years, absent significant deterioration, it cannot be considered disabling at present. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir.1992); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir.1992); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir.1990); Easttam v. Secretary of HEW, 364 F.2d 509, 513 (8th Cir.1966). If plaintiff's depression has not deteriorated, she cannot be considered disabled. If, however, plaintiff's depression has become more debilitating since the time she quit working, she can still be considered disabled.

The court finds that plaintiff's mental impairment did, in fact, deteriorate after her employment with Klein Tools terminated. Plaintiff saw Dr. Hansen for treatment approximately 50 times over the course of nine years, but 21 of those visits occurred during the two years plaintiff saw Dr. Hansen after her employment terminated. That amounts to nearly one visit per month from November 1993 to October 1995. While plaintiff was working, then, she saw Dr. Hansen approximately 29 times, but over the course of seven years. That only amounts to about one visit every three months before plaintiff lost her job at Klein Tools. The fact that plaintiff's treatment with Dr. Hansen intensified after her employment ended suggests that her mental condition deteriorated. Moreover, the court has already recognized that plaintiff was hospitalized for depression and suicide ideation after she lost her job. The record does not show that her condition be-

came so severe anytime before she stopped working. Finally, plaintiff needed medication for her depression after she was let go from Klein Tools. The court recognizes the possibility that plaintiff received medication for depression before she lost her job, but nevertheless the record does not so indicate, and the court's review is limited to the evidence in the record. *See Gunnels,* 867 F.2d at 1124.

For these reasons, the court finds that plaintiff's depression became more debilitating after her employment with Klein Tools ended, and therefore finds plaintiff mentally disabled despite the fact she was treated for mental impairment while she continued to work.

### 2. *Opinions of Plaintiff's Other Treating Physicians*

■ The ALJ recognized Dr. Ballard's opinion that plaintiff's "physical functional capacity was considerably restricted," but ruled that Dr. Ballard was not plaintiff's treating physician and thus discounted Dr. Ballard's opinion.

The Social Security Regulations (SSR) define a "treating physician" as any physician who "has provided [the claimant] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with the [claimant]." 20 C.F.R. § 404.1502. Section 404.1502 further states in relevant part:

"Generally, [the SSA] will consider that [claimant has] an ongoing treatment relationship with a physician . . . when the medical evidence establishes that [claimant] see[s] or. [has] seen the physician . . . with a frequency consistent with accepted medical practice for the type of treatment and evaluation required for [claimant's] medical condition(s). [The SSA] may consider a physician who has treated you only a few times . . . to be your treating source if the nature and frequency of the treatment is typical for your conditions(s).

[The SSA] will not consider a physician . . . to be [claimant's] treating physician if [claimant's] relationship with the physician . . . is not based on [the] need for treatment, but solely on [the] need to obtain a report in support of [claimant's] claim for disability."

20 C.F.R. § 404.1502.

According to the record, plaintiff saw Dr. Ballard in September 1992, but did not see her again until November 1994 (Tr. 199, 200, 203, 225). Plaintiff sought treatment from Dr. Ballard for the degenerative disc in her back. The court finds that seeing Dr. Ballard only twice in over two years is inconsistent with the type of treatment and evaluation required for the supposedly intense pain suffered by plaintiff from the degenerative disc. This point is made more poignant by the fact that plaintiff saw two other doctors, Dr. Roberts and Dr. MacMenamin, for the same problem more often, yet the record does not show that these physicians thought plaintiff was disabled. To consider Dr. Ballard plaintiff's treating physician, therefore, would be inconsistent with the SSR and unsupported by the record. The ALJ was justified in rejecting Dr. Ballard's opinion.[4]

### C. *Plaintiff's Subjective Complaints of Pain*

■ Plaintiff argues that the ALJ improperly discredited her subjective complaints of pain. When evaluating an applicant's claim of pain or other subjective impairment, the following factors are to be considered: (1) the applicant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir.1984); *Baumgarten,* 75 F.3d at 368; *Hall v. Chater,* 62 F.3d 220, 223 (8th Cir.1995); *Baker v. Secretary of HHS,* 955 F.2d 552, 555 (8th Cir.1992). The

4. The court notes that even though plaintiff argues that Dr. Roberts treated her for the degenerative disc problem, Dr. Roberts did not opine that plaintiff was disabled or unable to perform all work activity. Also, the records submitted by the University of Iowa Hospitals and Clinics dated July 1996, while supportive of plaintiff's claim, indicate procedures performed after the date of the ALJ's decision. Section 205(g) of the SSA, 42 U.S.C. § 405(g) confines review by the courts to the evidence which was before the Commissioner at the time of her decision. *See Jones v. Callahan,* 122 F.3d 1148, 1153 (8th Cir.1997); *Goad v. Shalala,* 7 F.3d 1397, 1398 (8th Cir.1993).

absence of medical evidence to support subjective complaints is but one factor used to evaluate the applicant's credibility regarding subjective complaints. *Polaski*, 739 F.2d at 1321–22; *Herbert v. Heckler*, 783 F.2d 128, 130 (8th Cir.1986). The ALJ may not disregard subjective complaints solely on the basis that there is no supporting, objective evidence.[5] *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). Subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Spradling v. Chater*, 126 F.3d 1072, 1075 (8th Cir. 1997); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).

The ALJ did not find plaintiff's subjective complaints of pain to be credible because plaintiff demonstrated a consistently good record of wages from 1977 until November 17, 1993, the date she alleges she became too disabled to work (Tr. 47), even though plaintiff began seeing physicians for her back pain beginning in January 1992 and presumably suffered from pain prior to 1992 (Tr. 288–94). The ALJ also concluded that the objective medical evidence did not support claimant's allegations of pain. Relying on *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir.1994), the ALJ noted that plaintiff collected unemployment benefits until May 1994 and looked for work until August 1994, and ruled that plaintiff's seeking and contemplating work indicated that her pain is not disabling (Tr. 47). Furthermore, because plaintiff contemplated receiving disability benefits to alleviate her dire financial situation, and because she emphasized the need to apply for food stamps (Tr. 331–46, Exhibit 24), the ALJ concluded that plaintiff appeared motivated to qualify for disability benefits, and thus discounted her subjective complaints. *See Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir.1992).

■ Finally, the ALJ stated that despite plaintiff's testimony that she could not sit comfortably for more than 15 to 20 minutes, and that looking up aggravates her neck, the ALJ observed plaintiff sit for over 40 minutes at the hearing and look up numerous times without visible discomfort (Tr. 47). "While the ALJ may disbelieve a claimant's

subjective complaints of pain because of inherent inconsistencies or other circumstances, the ALJ is not free to reject such complaints *solely* on the basis of personal observations made during the hearing." *Smith v. Heckler*, 735 F.2d 312 (8th Cir.1984) (citing *Reinhart v. Secretary of H.H.S.*, 733 F.2d 571, 573 (8th Cir.1984)). Thus, an ALJ is permitted to take notice of a claimant's demeanor during an administrative hearing, but must not reject the plaintiff's credibility on that basis alone. *Cline v. Sullivan*, 939 F.2d 560, 568 (8th Cir.1991); *see also Reinhart*, 733 F.2d at 573. The demeanor of plaintiff, therefore, remains an appropriate factor the ALJ was permitted to consider in this case; *Battles*, 902 F.2d at 660; *Long v. Bowen*, 866 F.2d 1066, 1067 (8th Cir.1989); and the ALJ's decision to discount plaintiff's credibility was not made on this basis alone.

When deciding whether subjective complaints are credible, the ALJ must discuss the five factors, as well as any inconsistent medical evidence, and show that all the evidence was evaluated. *Herbert*, 783 F.2d at 130. The ALJ discussed the five *Polaski* factors. The ALJ must say more than that the testimony on pain is not credible; the ALJ's credibility findings must be explicit. *Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir.1987). After its review, the court finds that the ALJ satisfied her obligation to set forth specific findings explaining her decision to discredit the plaintiff's subjective complaints of pain. The court concludes there was substantial evidence justifying the ALJ's decision to discredit plaintiff's subjective testimony regarding pain. The court notes that only the ALJ's credibility finding of plaintiff relating to her back and neck pain is found to be supported by substantial evidence and articulated by specific findings of inconsistency in the record.

### D. *Improper Hypothetical*

■ Plaintiff argues that the ALJ erroneously posed a hypothetical question to the vocational expert concerning plaintiff's work capacity because it limited plaintiff's restrictions to doing light work, when the hypothet-

---

5. The regulations governing evaluation of pain and other subjective conditions, however, are clear in that a plaintiff's "statements about ...

pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 404.1529(a).

ical should have included additional mental limitations (plaintiff's brief at 15). Because the hypothetical did not precisely set out the claimant's particular physical and mental impairments, it cannot serve as substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled within the meaning of the SSA. Plaintiff suggests that the hypothetical should have contained the impairments that Dr. Ballard and Dr. Hansen concluded were afflicting plaintiff.

An improper hypothetical cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal. *Whitmore v. Bowen,* 785 F.2d 262, 263–64 (8th Cir.1986). A hypothetical question must completely describe a Plaintiff's individual impairments so that the vocational expert may accurately assess whether jobs exist for the Plaintiff. *Newton v. Chater,* 92 F.3d 688, 694–5 (8th Cir.1996); *see also House v. Shalala,* 34 F.3d 691, 694 (8th Cir.1994); *Morse v. Shalala,* 32 F.3d 1228, 1231 (8th Cir.1994). The question must include only those impairments which actually exist, supported by substantial evidence, not those rejected by the ALJ. *Long v. Chater,* 108 F.3d 185, 188 (8th Cir.1997); *Davis v. Shalala,* 31 F.3d 753, 755 (8th Cir.1994). The hypothetical question may not contain assumptions not supported by the record. *Tennant v. Schweiker,* 682 F.2d 707, 711 (1982). The hypothetical cannot omit allegations of pain unless the ALJ makes findings that reject the asserted pain and sets forth the reasons for doing so. *Baugus v. Secretary of HHS,* 717 F.2d 443, 447 (8th Cir.1983).

The ALJ concluded that plaintiff's work capacity was restricted by the following limitations:

degenerative disc disease that limits [plaintiff] to lifting 20 pounds occasionally and 10 pounds frequently; standing and sitting with alternating of positions every hour that permits her to perform each of these functions 4 to 6 hours out of a 8 hour workday [sic]; occasional bending, stooping, squatting, twisting, kneeling, crawling and climbing; and psychological test scores, verbal IQ of 88, performance IQ of 86 and full scale IQ of 86 that prevent [plaintiff] from doing highly technical and complex work activity.

(Tr. 49). The ALJ further noted that despite these limitations, plaintiff's previous work experience endowed her with skills of maintaining records and knowledge of general care practices and procedures that are transferrable to other occupations. Based on this hypothetical the vocational expert concluded that within the "light exertional level" of work, plaintiff could work as a day care worker or companion, both of which have plenty of available positions (Tr. 50). Within the "sedentary exertional level" of work, into which plaintiff would not be able to transfer skills from her past work associated with lifting, the vocational expert concluded that plaintiff could work as a cashier/parking attendant, office helper, surveillance monitor, or telephone survey worker (Tr. 50). Each of these positions had openings.

The ALJ did not include the mental impairments suggested by plaintiff's attorney at the hearing in her hypothetical to the vocational expert (Tr. 50). Plaintiff's attorney asked that plaintiff's inability to maintain concentration and attention, as proposed by Dr. Hansen, be included among the impairments listed in the hypothetical, as well as the possibility that plaintiff will miss three days of work per month (Tr. 119). The ALJ rejected these suggestions; she offered the rationale that her "hypothetical question most closely matches this claimant's capabilities." If Dr. Hansen's opinion were given the weight to which it was entitled, those impairments suggested by plaintiff's attorney should have been included in the hypothetical because Dr. Hansen opined that plaintiff suffers from constant deficiencies of concentration (Tr. 298, 300). As previously discussed, the court finds that Dr. Hansen's opinion should have been entitled to controlling weight. Thus, because plaintiff's inability to concentrate was supported by substantial evidence, this mental impairment should have been included in the hypothetical. *Long,* 108 F.3d at 188. Because the ALJ's hypothetical did not completely describe plaintiff's impairments, it was improper and could not serve as substantial evidence supporting the ALJ's decision that plaintiff was not disabled. *Newton,* 92 F.3d at 694–5; *Whitmore,* 785 F.2d at 263–64.

## IV. CONCLUSION

While the court finds the ALJ's decision concerning plaintiff's back impairments and subjective pain was substantially supported by the record, the court also finds that the ALJ erroneously discounted the opinion of Dr. Hansen, plaintiff's psychiatrist. Consequently, the court finds there is not substantial evidence in the record to support the ALJ's final decision that plaintiff is not mentally disabled, and thus reverses the Commissioner's decision to that effect.

Upon the foregoing,

IT IS ORDERED that the decision of the Commissioner is reversed and the case is remanded for determination of benefits.