Carol R. CRIPE, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. C97–0006.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

July 8, 1998.

Jeffrey P. Berg, Cedar Rapids, Iowa, for Plaintiff, Carol R. Cripe.

Lawrence D. Kudej, Assistant United States Attorney, Cedar Rapids, Iowa, Heather J. Schlozman, Assistant Regional Counsel, Social Security Administration, for Defendant, Commissioner of Social Security.

## ORDER

MELLOY, District Judge.

This matter comes before the court pursuant to the plaintiff's January 10, 1997 complaint seeking reversal of the final decision of the Commissioner of Health and Human Services denying the plaintiff's claim for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*

## I. BACKGROUND

### A. *Procedural History*

This action involves the plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Social Security Act), 42 U.S.C. §§ 1381 *et seq.*, which she filed on April 19, 1993 (Tr. 198–201). In her application for SSI, the plaintiff alleged that she became disabled in March of 1992 as a result of rheumatoid arthritis. The plaintiff's application was denied initially (Tr. 193–97) and after reconsideration (Tr. 176–80). On March 13, 1995, an Administrative Law Judge (ALJ) issued a decision unfavorable to the plaintiff (Tr. 295–310). On December 6, 1995, the Appeals Council of the Social Security Administration vacated the hearing decision and remanded the case for further proceedings (Tr. 322–25).

On June 11, 1996, the plaintiff received a supplemental hearing in front of a second ALJ (Tr. 13–29). After the supplemental hearing, the second ALJ found that the plaintiff retained the residual function capacity to perform her past work as a packager (Tr. 29). On that basis, the second ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (Tr. 167). On November 15, 1996, the Appeals Council denied the plaintiff's request for review (Tr. 5–6).

## B. *Findings of Fact*

The plaintiff, Carol R. Cripe, was born on November 1, 1947 (Tr. 198). On December 18, 1992, the date of the alleged onset of disability, the plaintiff was 45 years old. The plaintiff has a ninth grade education, but reads at a 6.6 grade level and performs mathematics at a 2.9 grade level (Tr. 290). The plaintiff's relevant past work was as a packager and a security assistant (Tr. 204–205, 288). The plaintiff was denied unemployment compensation on March 21, 1993, because her physician's statement to Job Service indicated that she was not able to work (Tr. 129–131, 382–383). The plaintiff has not worked since her alleged onset date (Tr. 374).

The plaintiff has been treated by a rheumatologist, Dr. Michael Brooks, since January of 1992 (Tr. 240). At the initial visit, Dr. Brooks found tender points at the right lateral epicondyle, the right subacromial area, the left trapezial ridge, the low back, both greater trochanters, both medial fat pads of the knee and the anserine bursa (Tr. 243). In September of 1992, Dr. Brooks stated that the plaintiff had a low grade positive rheumatoid factor and mild polyarthritis (Tr. 245). Dr. Brooks' examination also revealed minimal synovitis over the right wrist and tenderness over the forefoot (Tr. 245).

In December of 1992, the plaintiff reported to Dr. Brooks that she had stopped taking her medication because it was causing her hair to fall out and that she had experienced some pain but no significant swelling (Tr. 246). The plaintiff's joint exam at that time revealed no synovitis.

In May of 1993, Dr. Brooks stated that the plaintiff had a positive rheumatoid factor, low grade anemia, and had polyarthritis in the past. Dr. Brooks also stated that the plaintiff had no deformities in her joints and x-rays revealed no definite erosions. Dr. Brooks opined that: (1) the plaintiff should not perform activities which require lifting more than 30 pounds; (2) the plaintiff should not work in a job which required stooping, kneeling, crawling, or rapid, repetitive movements of her hands; and (3) the plaintiff would be unable to perform jobs which require her to stand or walk for more than an hour without being able to sit (Tr. 249–50).

In August of 1993, the plaintiff reported increasingly severe pain to Dr. Brooks and her joint examination showed active synovitis both in her ankles and in the MTP joints of her feet. Dr. Brooks stated he believed that the plaintiff had a component of a fibromyalgia syndrome along with her rheumatoid arthritis (Tr. 252). During a later visit in August of 1993, Dr. Brooks found swelling over the temporal mandibular joint and administered medication to the joint (Tr. 253).

In September of 1993, Dr. Brooks wrote a letter which noted that the plaintiff had experienced swelling in the small joints of her hands, but had no chronic deformities. Dr. Brooks stated that, in addition to the plaintiff's previous job limitations, she should also not perform a job which required heavy gripping movements of her hands or any significant lifting over 20 pounds on a regular basis (Tr. 240–41).

The plaintiff was evaluated by Dr. Jeffrey Wilharm, a consulting psychiatrist in October of 1993 (Tr. 259). Dr. Wilharm found that the plaintiff's "physical limitations are her greatest impairments" (Tr. 260). Dr. Wilharm did not believe that the plaintiff met the criteria for a "full-blown depressive episode," but he thought she may develop enough symptomatology to meet the criteria in the future (Tr. 260).

In November of 1994, Dr. Brooks responded to a *Questionnaire Concerning Arthritis* form (Questionnaire) provided by the plaintiff's attorney, as follows:

1. The plaintiff could lift no more than ten pounds on a regular basis (Question 9);

2. Asked if the plaintiff could work an eight-hour day—Dr. Brooks responded:

"not at present. She is in chronic and diffuse pain." (Question 10);

3. The plaintiff needed to "lie down for 1–2 hours during the day" (Question 11);

4. In an eight-hour workday with frequent changes in her position, the plaintiff was capable of walking for up to two hours, standing for up to four hours and sitting for up to four hours (Question 12);

5. The plaintiff would likely miss three or more days of work per month due to her symptoms (Question 15);

6. "In addition to the rheumatoid arthritis [the plaintiff] has fibromyalgia which causes chronic diffuse soft tissue pain" (Question 16) (Tr. 268–272).

In January of 1995, Loren Mouw, M.D., diagnosed the plaintiff with cervical spondylosis and performed a foraminotomy and excision of an intervertebral disc (Tr. 333). In a letter to Dr. Brooks dated March 17, 1995, Dr. Mouw reported that the plaintiff no longer had radicular pain, that she still had distal numbness, that her strength was intact and that her reflexes at the right biceps were mildly decreased. Dr. Mouw also stated that the plaintiff was "recovering nicely" from the foraminotomy and that she should continue with her activities as tolerated (Tr. 344). Dr. Mouw saw the plaintiff again in June of 1995 and reported that she had satisfactorily recovered from her surgery but that she still experienced back pain (Tr. 349).

Dr. Brooks examined the plaintiff in April, June, July and September of 1995 and January of 1996. At that the April 1995 examination, Dr. Brooks checked the plaintiff's joints and found synovitis in her hands and feet (Tr. 345). In June of 1995, Dr. Brooks examined the plaintiff's joints and found no synovitis in the hands, wrists, elbows, shoulders or the left knee (Tr. 348). He did, however, observe swelling and effusion in her right knee and swelling in the MTP joints of both feet. The plaintiff requested an increase in her dosage of Prednisone at that time but Dr. Brooks did not comply with her request because he did not see enough swelling in her joints to warrant a increase. After Dr. Brooks examined the plaintiff in July of 1995, he reported that he found no synovitis in the plaintiff's peripheral joints but that X-rays of her cervical spine showed some joint space narrowing (Tr. 351). At that same exam, the plaintiff complained of an acute onset of neck pain with radiation into the right shoulder which Dr. Brooks attributed to her fibromyalgia (Tr. 351). In September of 1995, the plaintiff reported that she had less neck pain and spasms recently (Tr. 354). During the September 1995 examination, Dr. Brooks found active synovitis in the plaintiff's MTP joints and tenderness in the shoulders and the paraspinal muscles of her neck. Four months later, when Dr. Brooks examined the plaintiff in January of 1996, she complained of tenderness in her right wrist, right hand and right knee as well as in both hips (Tr. 356). Dr. Brooks reported that he believed the plaintiff's fibromyalgia was causing her the most discomfort at that time.

The plaintiff began seeing Ronald G. Nelson, Ph.D., a licensed clinical psychologist, on January 24, 1996 (Tr. 371). Dr. Nelson reported that the plaintiff was experiencing mild to moderate depression and diagnosed an adjustment disorder with depressed mood (Tr. 371). On May 30, 1996, after having seen the plaintiff for at least six more sessions, Dr. Nelson confirmed his initial diagnosis and stated, "[t]he depression is directly related to the difficulty the client has in adjusting to her chronic arthritic condition" (Tr. 378). Dr. Nelson also stated that the plaintiff was making adequate progress in learning to cope with her stress and that her prognosis was "good" (Tr. 378).

The plaintiff received her supplemental hearing on June 11, 1996 (Tr. 117–173). At that hearing, the ALJ proposed two hypothetical questions to a vocational expert regarding the ability of a person to work within the national economy (Tr. 167–171). The subject of both hypothetical questions was a 48–year–old female with limited education, functioning at the marginal level, with past work experience as a packager.

In the first hypothetical, the ALJ asked the vocational expert to assume that the individual has the following impairments: (1) rheumatoid arthritis; (2) possible fibromyalgia with complaints of pain in various joints; (3) iron deficiency; (4) anemia; (5) status post sixth cervical formen or spondylosis; (6) a history of cataracts; (7) an adjustment disorder with depressed mood; (8) the inabil-

ity to lift more than 20 pounds maximum and not more than 10 pounds frequently; (9) the inability to stand for more than 60 minutes at a time and no more than four out of eight hours; (10) the inability to sit for more than 60 minutes at a time and no more than four out of eight hours; (11) the inability to walk for more than 60 minutes at a time and no more than two out of eight hours; (12) no repetitive bending, stooping, squatting, kneeling, crawling, climbing, heavy gripping or fine manipulation; (13) no continuous pushing or pulling; (14) no repetitive work requiring her arms to be over her head; (15) no work at unprotected heights; (16) no very complex or technical work; (17) no work requiring mathematical computations or involving written material; (18) no work requiring constant attention to detail; (19) no work requiring a fast pace; and (20) no work which involves more than a mild to moderate level of stress (Tr. 167–68). The vocational expert responded to this first hypothetical by testifying that an individual with these impairments could perform work in a number of other light or sedentary exertional level occupations in the local and national economies, including work as a packager (Tr. 168–69).

In the second hypothetical, the ALJ asked the vocational expert to consider the individual from the first hypothetical with the following additional impairments: (1) the inability to lift more than five to ten pounds; (2) the inability to sit for more than a half hour at a time; (3) the inability to stand for more than a half hour at a time; (4) the inability to walk for more than one block at a time; (5) no repetitive operation of hand controls; (6) no repetitive gripping with continuous gross or fine manipulation; (7) no work requiring fine visual acuity; (8) no work requiring more than occasional contact with the public, co-workers, or supervisors; and (9) no work which involves more than a mild level of stress (Tr. 169–70). The vocational expert responded to this second hypothetical by testifying that an individual with these impairments would be precluded from all work generally performed in the national economy, including the work of a packager (Tr. 170–71).

Also at the supplemental hearing, in response to questioning by the plaintiff's attorney, the vocation expert testified that a condition that would cause the plaintiff to miss more than three days of work per month would preclude all employment (Tr. 171). The vocational expert also testified that the need to lie down one to two hours during a normal eight-hour day would preclude all employment (Tr. 171).

On August 20, 1996, the ALJ who presided over the supplemental hearing issued his decision (Tr. 1–29). In that decision, the ALJ found that the plaintiff had all of the impairments contained in his first hypothetical and none of the additional impairments contained either in his second hypothetical or in the plaintiff attorney's questions to the vocational expert (Tr. 28–29). The ALJ concluded that the plaintiff's impairments do not prevent her from performing her past relevant work as a packager and accordingly found that plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 29).

## II. STANDARD OF REVIEW

The scope of a district court's review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g), which provides in part:

The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....

42 U.S.C. § 405(g).

In order for the court to affirm the ALJ's finding of fact, those findings must be supported by substantial evidence appearing on the record as a whole. *See Trossauer v. Chater,* 121 F.3d 341, 342 (8th Cir.1997); *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992); *Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir.1991); *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Johnson v. Chater,* 127 F.3d 756, 758 (8th Cir.1997); *Trossauer,* 121 F.3d at

342; *Cruse,* 867 F.2d at 1184; *Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986). In assessing the substantiality of the evidence, the court must take into account evidence which fairly detracts from the ALJ's findings. *Trossauer,* 121 F.3d at 342; *Cruse,* 867 F.2d at 1184; *Hall v. Bowen,* 830 F.2d 906, 911 (8th Cir.1987). Substantial evidence requires "something less than the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse,* 867 F.2d at 1184 (quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The court must consider the weight of evidence appearing in the record and apply a balancing test to contradictory evidence. *Gunnels v. Bowen,* 867 F.2d 1121, 1124 (8th Cir.1989); *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987).

### III. ANALYSIS

The plaintiff contends that the ALJ's decision is flawed because the ALJ used an improper hypothetical question to elicit the testimony about her alleged ability to work as a packager. Specifically, the plaintiff argues that the ALJ's first hypothetical was improper because: (1) it did not accurately reflect her treating physician's assessment of her physical capacity; and (2) because it did not take into account her subjective complaints of pain. Because the ALJ's decision was based on the vocational expert's answer to the first hypothetical, the plaintiff asks the court to reverse ALJ's decision.

■■■■] An improper hypothetical cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal. *Whitmore v. Bowen,* 785 F.2d 262, 263–64 (8th Cir.1986). A hypothetical question must completely describe a plaintiff's individual impairments so that the vocational expert may accurately assess whether jobs exist for the plaintiff. *Newton v. Chater,* 92 F.3d 688, 694–5 (8th Cir.1996); *see also House v. Shalala,* 34 F.3d 691, 694 (8th Cir.1994); *Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994). The question must include only those impairments which actually exist, supported by substantial evidence, not those rejected by the ALJ. *Long v. Chater,* 108 F.3d 185, 188 (8th

Cir.1997); *Davis v. Shalala,* 31 F.3d 753, 755 (8th Cir.1994). In analyzing the appropriateness of a hypothetical question, therefore, the court must determine whether the impairments excluded from the question were appropriately rejected by the ALJ.

■ The plaintiff contends that her treating physician, Dr. Brooks, identified several impairments that the ALJ did not include in his first hypothetical. These omitted impairments were: (1) that the plaintiff could not work an eight-hour day; (2) that the plaintiff needed to lie down for one to two hours during an eight-hour day; and (3) that the plaintiff would likely miss three or more days of work per month due to her symptoms (Tr. 22). The plaintiff claims that Dr. Brooks' assessment of these omitted impairments is well-supported by medical and diagnostic data and is consistent with the other evidence in the record. Accordingly, the plaintiff argues that the omitted impairments should have been included in any hypothetical question relied upon by the ALJ.

The Social Security regulations state that a treating physician's opinion on the issue of the nature and severity of the plaintiff's impairment should be given controlling weight if it is consistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). The court, by the same token, recognizes that the ALJ was not required to believe the opinions of Dr. Brooks if other assessments were supported by better or more thorough medical evidence or if, on balance, the medical evidence convinced him otherwise. *Rogers v. Chater,* 118 F.3d 600, 602 (8th Cir.1997)(footnote omitted)(citing *Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986)).

It is undisputed that Dr. Brooks was the plaintiff's treating physician. The ALJ had no "other assessments" supported by better or more thorough medical evidence because Dr. Brooks was the only physician who treated the plaintiff's rheumatoid arthritis and fibromyalgia. Without any "other assessments," the only valid basis for rejecting Dr. Brooks' opinions would have been if the medical evidence in the record did not support them. The ALJ felt that the objective medical evidence refuted Dr. Brooks' assessment

of the omitted impairments. The court does not share that view.

A review of the ALJ's decision shows that the ALJ selectively quoted from Dr. Brooks' treatment notes, isolating any statement that minimized the plaintiff's condition. A review of the treatment notes themselves shows a staggering combination of patient complaints and objectively verifiable symptoms. From January 3, 1992 to August 27, 1993, Dr. Brooks, a specialist in the diagnosis and treatment of rheumatoid arthritis, recorded and treated tenderness, pain and/or swelling in the plaintiff's hands (Tr. 242), wrists (Tr. 244), elbows (Tr. 251), shoulders (Tr. 248), neck (Tr. 251), back (Tr. 252), hips (Tr. 252), knees (Tr. 246), ankles (Tr. 251), feet (Tr. 245) and jaws (Tr. 253). On three occasions during the course of his treatment (5/93, 9/93 and 11/94), Dr. Brooks set physical limitations for the plaintiff, each more stringent than the last (Tr. 249–50, 240–41, 268–272). Dr. Brooks treated the plaintiff for over two years and examined her on at least eight occasions before giving the opinions in the November 1994 questionnaire. The court finds that those opinions are supported by the record.

Dr. Brooks' assessment of the three omitted impairments is consistent with the medical evidence in the record. Accordingly, Dr. Brooks' opinions should have been given controlling weight and all impairments identified by Dr. Brooks should have been included in any hypothetical question relied upon by the ALJ. Because the ALJ's first hypothetical question did not completely describe the plaintiff's impairments, it was improper and could not serve as substantial evidence in the ALJ's decision. *Newton,* 92 F.3d at 694–95; *Whitmore,* 785 F.2d at 263–64.

This finding of impropriety makes moot the ALJ's rejection of the plaintiff's subjective complaints of pain.

## IV. CONCLUSION

Without the vocational expert's testimony based on the ALJ's first hypothetical question, there is no substantial evidence in the record to support the ALJ's decision that the plaintiff is not disabled. In light of the fact that, during the hearing, the vocational expert testified that two of the plaintiff's omitted impairments would preclude all employment (Tr. 171), the court reverses the Commissioner's decision.

Upon the foregoing,

IT IS ORDERED that the decision of the Commissioner is reversed and the case is remanded for determination of benefits.

## JUDGMENT IN A CIVIL CASE

***DECISION BY COURT:*** This action came on for decision before the Court. The issues have been decided and a decision has been rendered.

## IT IS ORDERED AND ADJUDGED

That the action is reversed and the case is remanded to the Commissioner for determination of benefits.